**UNITED STATES of America,
Plaintiff,**

v.

**Kelli DAVIS, Defendant.**

**No. CR 03–41 WJR.**

United States District Court,
C.D. California.

Aug. 13, 2004.

Debra W. Yang, United States Attorney, Steven D. Clymer, Special Assistant United States Attorney, Christine M. Adams, Assistant United States Attorney, Stephanie Yonekura McCaffrey, Assistant United States Attorney, Los Angeles, CA, for Plaintiff, U.S.

Mark J. Geragos, George W. Buehler, Mark M. Kassabian, Geragos & Geragos, A Professional Corporation of Lawyers, Los Angeles, CA, for Defendant, Kelli Davis.

## OPINION AND ORDER

REA, District Judge.

Having considered the motion, the papers filed in support thereof and in opposition thereto, the oral argument of counsel, and the file in the case, the Court now makes the following decision. The Court finds that *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), applies to Defendant's sentencing as explained in *United States of America v. Ameline,* 376 F.3d 967 (9th Cir.2004). The Court will sentence Defendant as scheduled on September 13, 2004, based on an eight point offense level without the aid of a sentencing jury.

## BACKGROUND

Defendant, Kelli Davis ("Defendant") was charged on January 6, 2003, with six counts of wire fraud resulting from six real estate loan transactions in which Defendant acted as a loan broker. Defendant was charged with submitting false information about borrowers' residence, employment, and income in applications for loans insured by the Federal Housing Administration ("FHA").

The indictment also charged Defendant with causing "fraudulent FHA-insured

loan applications seeking not less than $9 million to be submitted in the names of...non-qualifying and straw buyers." However, the six charged transactions resulted in only $644,515.00 in loss to the FHA. Because the Government did not pursue any counts against Defendant other than the six originally charged, the Court granted Defendant's motion to strike the reference to the $9 million.[1] *See* Judge Baird's Minute Order of February 22, 2003.

On April 4, 2003, the jury returned guilty verdicts on the six charged wire fraud counts. The jury made no findings, however, regarding any uncharged transactions.

Defendant moved for an order establishing that the rule announced in *Blakely* applies to sentencing in this case. Since the time Defendant filed its motion, the Ninth Circuit in *Ameline* addressed the issues raised by *Blakely* and held that the *Blakely* Court's reasoning applies fully to the United States Sentencing Guidelines. This Court is bound by the *Ameline* decision.

## DISCUSSION

Defendant argues that the rule announced in *Blakely* applies to sentencing in this case. *Blakely v. Washington,* — U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Since the time Defendant filed its motion, the Ninth Circuit in *Ameline* held that the *Blakely* Court's reasoning applies fully to the United States Sentencing Guidelines. *United States of America v. Ameline,* 376 F.3d 967 (9th Cir.2004). This Court is bound by the *Ameline* decision and, thus, holds that *Blakely's* reasoning applies to this case.

---

1. On March 4, 2003, Judge Baird transferred this case to the calendar of Judge Rea for all further proceedings.

The *Ameline* court described the *Blakely* opinion as working "a sea change in the body of sentencing law." 376 F.3d at 973. *Blakely's* premise is simple: a district court judge may only impose a sentence based on "facts reflected in the jury verdict or admitted by the defendant." *Id.* at 973–75. While the court must apply *Blakely* to determine the proper method of sentencing, this is challenging because the *Blakely* analysis is extremely complex.

*Ameline* held the following: (1) *Blakely* does apply to the United States Sentencing Guidelines; 376 F.3d at 974–78, and, (2) the unconstitutional portions of the Guidelines are severable from the remainder of the Guidelines, *Id.* at 980–83. *Ameline* then directed the district court on remand to "convene a sentencing jury to try the drug quantity and firearm issues, which, if proven beyond a reasonable doubt, may be used to increase Ameline's sentence." *Id.* at 983.

In this case, the government seeks the Court to apply a 13 point enhancement for the amount of loss to the victim, the FHA. Under the Guidelines, the Court must apply this 13 point enhancement if it finds that Defendant's fraudulent acts in making 82 loans that were not charged in the indictment caused the loss to FHA. Clearly, the Court may not make such a finding under *Blakely* and *Ameline*.

Simply transferring this inquiry to a sentencing jury, however, will not resolve the constitutional infirmity under *Blakely*. Defense counsel's reply briefly informs the Court that the government could not have charged Defendant with the 82 additional counts of wire fraud because the statute of limitations on those counts had already run. Thus, even if the trial occurred after *Blakely*, the government could not have presented the additional 82 counts to the jury. The Court will not allow the government to circumvent the statute of limitations through sentencing. Because these facts were barred by the statute of limitations and, thus, could not have been decided by the jury during trial, the Court will not allow them to get in through the back door as sentencing factors.[2] *See Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (rejecting government's attempt to disguise element of a crime as a sentencing factor). A sentencing jury is not appropriate for this type of enhancement, which is based on the Defendant's alleged commission of 82 crimes in addition to those charged in the indictment. *Cf. Ameline* at 983 (sentencing jury may appropriately determine the amount of drugs involved in the crime to which the defendant pled guilty).[3]

## CONCLUSION

For the forgoing reasons, the Court will sentence Defendant as scheduled on Sep-

---

**2.** The government additionally seeks a two point enhancement based on the amount of planning involved in the crime. The Court believes that this enhancement is warranted based on the jury's original findings. However, the sentence allowable with this enhancement is no different from the sentence without the two point enhancement. Thus, the question of the constitutionality of the two point enhancement is moot.

**3.** *U.S. v. Williams*, 217 F.3d 751, 754 (9th. Cir.2000). *See* U.S. Supplemental Opposition Brief to Defendant's *Blakely* Motion at 2. Williams involved merely "relevant conduct" as opposed to 82 distinct criminal acts, as evidenced here. Further, to the extent that *Williams* could apply to the instant case, the Court finds that the reasoning in *Blakely* forbids it.

tember 13, 2004 based on an eight point offense level without the aid of a sentencing jury. Additionally, the Court recognizes that the Supreme Court granted certiorari on *United States v. Booker*, 375 F.3d 508, 2004 WL 1535858 (7th Cir. July 9, 2004) and *United States v. Fanfan*, No. 03–47–P–H 2004 WL 1723114 (D. Me. June 28, 2004), which raise the same issues as *Ameline*, and thus the Court will exercise its inherent authority to pronounce an alternative, indeterminate sentence. The Court requests that the probation officer prepare a revised pre-sentence report that reflects this ruling.

IT IS SO ORDERED.