22 Cal.Rptr.3d 908 (2005)
125 Cal.App.4th 855
The PEOPLE, Plaintiff and Respondent,
v.
Terry D. AMONS, Defendant and Appellant.
No. A105374.
Court of Appeal, First District, Division One.
January 11, 2005.
Review Denied April 20, 2005.[*]
*910 Dirck Newbury, Under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Gerald A. Engler, Assistant Attorneys General, Eric D. Share, Kelly M. Croxton, Deputy Attorneys General, for Plaintiff and Respondent.
*909 SWAGER, J.
We conclude in this appeal that the new sentencing rules announced in Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (Blakely), do not apply retroactively upon revocation of defendant's probation to a final sentence that was previously imposed but suspended during his probationary period.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
On August 16, 1999, defendant entered a no contest plea to a charge of assault by means of force likely to cause great bodily injury (Pen.Code, § 245, subd. (a)(1)),[1] and admitted an enhancement for personal infliction of great bodily injury (§ 12022.7, subd. (a)).[2] On October 4, 1999, the trial court imposed a four-year upper term for the assault conviction, based upon aggravating circumstances which related to the offense and defendant's recidivism. An additional three-year term for the enhancement *911 was also imposed, for a total state prison sentence of seven years. Execution of the sentence was suspended, and defendant was placed on probation for four years. After a series of probation violations, defendant's probation was finally revoked on January 22, 2004, and the trial court ordered into execution the previously imposed seven-year state prison sentence. (§ 1203.2, subd. (c).)

DISCUSSION
The sole contention made by defendant on appeal is that the trial court violated the principles announced in the recent United States Supreme Court decision in Blakely, supra, 124 S.Ct. 2531, by imposing the upper term based on findings of "circumstances in aggravation" that "were not subject to jury determination beyond reasonable doubt" or admitted as part of his plea. Defendant asserts that the "new rule of decisional law" articulated in Blakely "must be applied to the instant case," which was "still pending" when the opinion was issued. He further argues that under Blakely the "statutory maximum" sentence which cannot be exceeded without a finding by the jury and proof beyond a reasonable doubt is limited to the middle term. Therefore, he complains that the upper term imposed upon him based upon findings by the trial court violated his constitutional rights as defined in Blakely.[3]
In Blakely, the United States Supreme Court revisited and expanded the scope of the rule previously established in Apprendi v. New Jersey (2000) 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435, (Apprendi), that "`[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" (Blakely, supra, 124 S.Ct. 2531, 2536, italics added.) At issue in Blakely was whether the determinate sentencing procedure followed by courts in the State of Washington deprived the petitioner of his "federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence." (Ibid.) At the sentencing hearing in Blakely an "exceptional sentence" of 90 months was imposed under the determinate sentencing procedure followed by courts in the State of Washington, based upon the trial judge's finding that the petitioner used "deliberate cruelty" in the commission of the offense, which was one of the statutorily enumerated grounds for departure from the standard sentencing range. (Id., at p. 2535.)
The court in Blakely operated from the conclusion reached in its prior decisions in Apprendi, supra, 530 U.S. 466, 120 S.Ct. 2348, and Ring v. Arizona (2002) 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556,[4] that *912 a defendant's constitutional rights have been violated when a judge "imposed a sentence greater than the maximum he could have imposed under state law without the challenged factual finding. Apprendi, supra, at 491-497 [, 120 S.Ct. 2348]; Ring, supra, at 603-609 [, 122 S.Ct. 2428]." (Blakely, supra, 124 S.Ct. 2531, 2537; see also United States v. Croxford (D.Utah 2004) 324 F.Supp.2d 1230, 1235-1236.) The notion advocated by the State in Blakely "that there was no Apprendi violation because the relevant `statutory maximum' is not 53 months, but the 10-year maximum for class B felonies in § 9A.20.021(1)(b)," and "no exceptional sentence may exceed that limit," was rejected as contrary to those "clear" precedents. (Blakely, supra, at p. 2537.) Instead, the court defined "the `statutory maximum' for Apprendi purposes [as] the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. [Citations.] In other words, the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment,' [citation], and the judge exceeds his proper authority." (Ibid; see also United States v. Ameline (9th Cir.2004) 376 F.3d 967, 975.)
The court then concluded: "The judge in this case could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea. Those facts alone were insufficient because, as the Washington Supreme Court has explained, `[a] reason offered to justify an exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense,' [citation], which in this case included the elements of second-degree kidnapping and the use of a firearm, see §§ 9.94A.320, 9.94A.310(3)(b). Had the *913 judge imposed the 90-month sentence solely on the basis of the plea, he would have been reversed. See § 9.94A.210(4). The `maximum sentence' is no more 10 years here than it was 20 years in Apprendi (because that is what the judge could have imposed upon finding a hate crime) or death in Ring (because that is what the judge could have imposed upon finding an aggravator)." (Blakely, supra, 124 S.Ct. 2531, 2537-2538, fn. omitted.) "Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in Apprendi), one of several specified facts (as in Ring), or any aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact." (Blakely, supra, at p. 2538, fn. omitted.) "Nor does it matter that the judge must, after finding aggravating facts, make a judgment that they present a compelling ground for departure. He cannot make that judgment without finding some facts to support it beyond the bare elements of the offense. Whether the judicially determined facts require a sentence enhancement or merely allow it, the verdict alone does not authorize the sentence." (Ibid., fn. 8.)
We first confront respondent's arguments that defendant "forfeited his claim" of Blakely error by failing to object in the trial court, and that his "appeal is barred as untimely." While we do not find that a defendant forfeits a claim of imposition of an unauthorized sentence under Blakely in the absence of an objection at trial, we agree with respondent that under the circumstances presented by the appeal before us defendant cannot take advantage of the rule announced in Blakely years after his sentence became final.
There is no dispute that the new procedural rules for the conduct of criminal prosecutions announced in Blakely govern all cases still pending on appeal or not yet final when the opinion was issued. (See Griffith v. Kentucky (1987) 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661; People v. Clair (1992) 2 Cal.4th 629, 672, 7 Cal.Rptr.2d 564, 828 P.2d 705; People v. Ashmus (1991) 54 Cal.3d 932, 991, 2 Cal.Rptr.2d 112, 820 P.2d 214; People v. Sisavath (2004) 118 Cal.App.4th 1396, 1400, 13 Cal.Rptr.3d 753; People v. Davis (1997) 57 Cal.App.4th 1404, 1408, fn. 6, 67 Cal.Rptr.2d 748.) "When a decision of [the United States Supreme] Court results in a `new rule,' that rule applies to all criminal cases still pending on direct review." (Schriro v. Summerlin (2004) 542 U.S. 348, 350-352, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442.) This is true whether the new rule is substantive or procedural, and even if it "constitutes a `clear break' with the past." (Griffith v. Kentucky, supra, at p. 328.)
"As to convictions that are already final, however," new procedural rules apply retroactively only in very "limited circumstances." (Schriro v. Summerlin, supra, 124 S.Ct. 2519, 2522.) The rule that prohibits retroactive application of a new law not in existence at the time a conviction became final supports the principle of finality which is essential to the operation of our criminal justice system. (Beard v. Banks (2004) 542 U.S. 406, 412-413, 124 S.Ct. 2504, 2511, 159 L.Ed.2d 494; United States v. Sanchez-Cervantes (9th Cir.2002) 282 F.3d 664, 667.) Thus, "new rules of constitutional law do not generally apply retroactively so as to permit reopening of final convictions...." (People v. Monge (1997) 16 Cal.4th 826, 841, 66 Cal.Rptr.2d 853, 941 P.2d 1121.)
"[W]e give retroactive effect to only a small set of `"watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal *914 proceeding.' [Citations.]" (Schriro v. Summerlin, supra, 124 S.Ct. 2519, 2523.) New constitutional rules of criminal procedure are applicable to those cases which have become final before the new rules are announced, "`if, and only if, it falls within one of two narrow exceptions to the general rule of nonretroactivity.' [Citation.]" (Leavitt v. Arave (9th Cir.2004) 383 F.3d 809, 823.) A new rule is not given retroactive application to convictions already final "`unless the new rule [1] places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, or [2] could be considered a watershed rule of criminal procedure.' [Citations.]" (United States v. Montalvo (9th Cir.2003) 331 F.3d 1052, 1055; see also Caspari v. Bohlen (1994) 510 U.S. 383, 396, 114 S.Ct. 948, 127 L.Ed.2d 236; Teague v. Lane (1989) 489 U.S. 288, 311-312, 109 S.Ct. 1060, 103 L.Ed.2d 334; Arredondo v. Ortiz (9th Cir. 2004) 365 F.3d 778, 781; People v. Barragan (2004) 32 Cal.4th 236, 244-245, 9 Cal. Rptr.3d 76, 83 P.3d 480.)
The United States Supreme Court "has not made Blakely retroactive" to cases already final or before the court on collateral review. (Cook v. United States (9th Cir.2004) 386 F.3d 949, 950.) Nor did the rule articulated in Blakely either pronounce substantive law that alters the range of conduct or the class of persons punished by the law, or place any conduct beyond the authority of the state to proscribe. (See Schriro v. Summerlin, supra, 124 S.Ct. 2519, 2520-2521; United States v. Sanchez-Cervantes, supra, 282 F.3d 664, 668; McCoy v. United States (11th Cir. 2001) 266 F.3d 1245, 1256-1257; United States v. Moss (8th Cir.2001) 252 F.3d 993, 997, fn. 3; United States v. Sanders (4th Cir.2001) 247 F.3d 139, 148.) Rather, it is a procedural rule that affects only the manner of determining the defendant's punishment. (Schriro v. Summerlin, supra, at pp. 2523-2524.)
We further conclude that Blakely did not establish a new rule that falls within the "watershed" exception to nonretroactivity, which "must meet two requirements: [1] Infringement of the rule must `seriously diminish the likelihood of obtaining an accurate conviction,' and [2] the rule must `"`alter our understanding of the bedrock procedural elements'"....' [Citations.]" (Tyler v. Cain (2001) 533 U.S. 656, 665, 121 S.Ct. 2478, 150 L.Ed.2d 632; see also Leavitt v. Arave, supra, 383 F.3d 809, 823-824.) "The `watershed' exception does not apply to every rule that promotes accuracy and guarantees due process." (Leavitt v. Arave, supra, at p. 825.) This exception identified in Teague v. Lane, supra, 489 U.S. 288, 311, 109 S.Ct. 1060, for "`"watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding' ... is clearly meant to apply only to a small core of rules requiring `observance of "those procedures that ... are `implicit in the concept of ordered liberty.'"' [Citations.]" (Graham v. Collins (1993) 506 U.S. 461, 478, 113 S.Ct. 892, 122 L.Ed.2d 260; see also Beard v. Banks, supra, 124 S.Ct. 2504, 2513.) "That a new procedural rule is `fundamental' in some abstract sense is not enough; the rule must be one `without which the likelihood of an accurate conviction is seriously diminished.' [Citation.]" (Schriro v. Summerlin, supra, 124 S.Ct. 2519, 2523.) "Improving the accuracy of trial, however, is not sufficient. Rather, a `rule that qualifies under this exception must not only improve accuracy, but also alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.' [Citation.]" (United States v. Sanders, supra, 247 F.3d 139, 148.) The United States Supreme Court has repeatedly cautioned that "`because *915 we operate from the premise that such procedures would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge.' [Citation.]" (Graham v. Collins, supra, at p. 478, 113 S.Ct. 892; see also O'Dell v. Netherland (1997) 521 U.S. 151, 157, 117 S.Ct. 1969, 138 L.Ed.2d 351.)[5]
Although the Blakely decision has been fittingly described as effectuating "a sea change in the body of sentencing law" (United States v. Ameline, supra, 376 F.3d 967, 973; see also United States v. Davis (C.D.Cal.2004) 330 F.Supp.2d 1098, 1099), we do not perceive in it any element so fundamental to the likelihood of an accurate conviction or implicit in the concept of ordered liberty that it demands retroactive application under the Teague watershed exception. (United States v. Swinton (3d Cir.2003) 333 F.3d 481, 490.) Like Apprendi and Ring before it, nothing in the Blakely opinion corrected a procedure that acutely diminished the accuracy of previously rendered convictions or sentences. (Sepulveda v. United States (1st Cir.2003) 330 F.3d 55, 59-61; Goode v. United States (6th Cir.2002) 305 F.3d 378, 385; United States v. Sanchez-Cervantes, supra, 282 F.3d 664, 669.) The conclusion in Blakely, supra, 124 S.Ct. 2531, 2536-2537  that defined the prescribed "`statutory maximum'" sentence that cannot be exceeded without a finding by a jury beyond a reasonable doubt  impacts only the length of sentences, so the integrity of the underlying convictions has not been placed in issue at all. (United States v. Sanchez-Cervantes, supra, at pp. 669-670.) Although Blakely designates "the proper factfinding roles of judge and jury, it affords an innocent defendant no additional shield from wrongful conviction." (Sepulveda v. United States, supra, at p. 61.)
Further, the Blakely rule that merely shifts some fact-finding duties upon which a sentence choice is conditioned from an impartial judge to a jury does not implicate the intrinsic reliability and fundamental fairness of sentencing proceedings. (See Neder v. United States (1999) 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35.) Defendant's sentence was not indiscriminately "plucked out of thin air," but rather was the product of the trial court's careful consideration and determination "based upon discrete findings of fact established by a fair preponderance of the evidence." (Sepulveda v. United States, supra, 330 F.3d 55, 60.) And judges are not considered inherently less trustworthy than jurors to impose a fair sentence. (See Curtis v. United States (7th Cir.2002) 294 F.3d 841, 844.) "[T]here is `little reason to believe that juries will have substantially different interpretations'" of sentencing findings and decisions than judges. (United States v. Sanders, supra, 247 F.3d 139, 149; see also Bilzerian v. United States (2d Cir.1997) 127 F.3d 237, 241.) At the very least, we do not think "judicial factfinding so `seriously diminishe[s]' accuracy" as to produce "an `"impermissibly large risk"'" of injustice. (Schriro v. Summerlin, supra, 124 S.Ct. 2519, 2525.) And even in the aftermath of Blakely and Apprendi judges remain vested with traditional, constitutionally valid authority to make reliable sentencing findings under a preponderance of the evidence standard and impose punishment within the particular range determined by the Legislature. (See Sepulveda v. United States, supra, at *916 pp. 60-61; Curtis v. United States, supra, at p. 844; United States v. Buckland (9th Cir.2002) 277 F.3d 1173, 1185; United States v. Sanders, supra, at p. 150.)
In DeStefano v. Woods (1968) 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308, the United States Supreme Court refused to give retroactive effect to the decision in Duncan v. Louisiana (1968) 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491, which applied the Sixth Amendment's jury trial guarantee to the states. The court in DeStefano concluded that although "the right to jury trial generally tends to prevent arbitrariness and repression[,] ... `[w]e would not assert ... that every criminal trial  or any particular trial  held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury.'" (392 U.S. 631, 633-634, 88 S.Ct. 2093, quoting Duncan, supra, at p. 158, 88 S.Ct. 1444.) The court added that "[t]he values implemented by the right to jury trial would not measurably be served by requiring retrial of all persons convicted in the past by procedures not consistent with the Sixth Amendment right to jury trial." (DeStefano, supra, at p. 634, 88 S.Ct. 2093.) If a trial conducted entirely without a jury was not found impermissibly inaccurate, "it is hard to see how a trial in which a judge finds only aggravating factors could be." (Schriro v. Summerlin, supra, 124 S.Ct. 2519, 2526.) Blakely's "new rule not only fails to impugn the accuracy of convictions that became final beforehand but also falls short of rendering sentences imposed under the [pre-Blakely scheme] seriously inaccurate." (Sepulveda v. United States, supra, 330 F.3d 55, 60; see also Goode v. United States, supra, 305 F.3d 378, 385.) Thus, retroactive application of Blakely is not necessary to ameliorate any fundamental unfairness in the criminal justice system. (United States v. Sanders, supra, 247 F.3d 139, 150.)
We also find that Blakely did not proclaim such a "bedrock principle" of our criminal justice system that it must be characterized as a "watershed" change in constitutional law. (United States v. Sanders, supra, 247 F.3d 139, 150.) The Blakely rule governs only that limited class of cases in which a sentence is imposed by the trial court beyond the statutory maximum. All other sentences within the statutory range still do not require findings by the jury beyond a reasonable doubt under Blakely. Therefore, Blakely has not declared the kind of "sweeping rule" necessary to fall within the watershed exception. (United States v. Sanchez-Cervantes, supra, 282 F.3d 664, 668-669; see also United States v. Sanders, supra, at p. 150.)
Finally, noncompliance with Apprendi or Blakely is not accorded the status of a structural error that renders a proceeding fundamentally unfair and requires reversal per se. (See United States v. Kentz (9th Cir.2001) 251 F.3d 835, 842; United States v. Sanchez-Cervantes, supra, 282 F.3d 664, 669-670; United States v. Terry (1st Cir.2001) 240 F.3d 65, 74-75; United States v. Nance (7th Cir.2000) 236 F.3d 820, 823-824; United States v. Meshack (5th Cir.2000) 225 F.3d 556, 575.) Instead, the harmless error analysis for federal constitutional errors (Chapman v. California (1967) 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705) has been employed to determine whether reversal is required. (See People v. Neal (2003) 31 Cal.4th 63, 86, 1 Cal.Rptr.3d 650, 72 P.3d 280; People v. Carter (2003) 30 Cal.4th 1166, 1221-1222, 135 Cal.Rptr.2d 553, 70 P.3d 981; People v. Sengpadychith (2001) 26 Cal.4th 316, 326, 109 Cal.Rptr.2d 851, 27 P.3d 739; People v. Woodward (1992) 4 Cal.4th 376, 387, 14 Cal.Rptr.2d 434, 841 P.2d 954; *917 People v. Emerson (2004) 124 Cal.App.4th 171, 179-180, 21 Cal.Rptr.3d 134.) If it is possible for a criminal defendant to receive a fair and accurate trial without the new procedural protections offered by Blakely, "it would seem illogical to hold that such an error is a watershed rule that `implicate[s] the fundamental fairness of the trial.'" (United States v. Sanchez-Cervantes, supra, 282 F.3d 664, 670; see also United States v. Sanders, supra, 247 F.3d 139, 150-151.)
The United States Supreme Court explained when deciding that the decision in Ring cannot be given retroactive effect: "The right to jury trial is fundamental to our system of criminal procedure, and States are bound to enforce the Sixth Amendment's guarantees as we interpret them. But it does not follow that, when a criminal defendant has had a full trial and one round of appeals in which the State faithfully applied the Constitution as we understood it at the time, he may nevertheless continue to litigate his claims indefinitely in hopes that we will one day have a change of heart. Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." (Schriro v. Summerlin, supra, 124 S.Ct. 2519, 2526.)[6] We reach the same conclusion that the principles announced in Blakely apply only to cases not yet final when the opinion was issued.
Sentence was imposed upon defendant in October of 1999, but execution of his sentence was suspended and he was placed on probation. Thus, defendant's conviction and sentence became a final judgment long before Blakely altered the rules for finding aggravating circumstances and imposing upper term sentences. "State convictions are final `for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.' [Citations.]" (Beard v. Banks, supra, 124 S.Ct. 2504, 25104.) An order granting probation is identified in section 1237 as a "final judgment" for purposes of taking an appeal. (People v. Mazurette (2001) 24 Cal.4th 789, 792, 102 Cal. Rptr.2d 555, 14 P.3d 227; see also People v. Broughton (2003) 107 Cal.App.4th 307, 320, 133 Cal.Rptr.2d 161; People v. Martinez (1998) 62 Cal.App.4th 1454, 1461-1462, 73 Cal.Rptr.2d 358; People v. Harty (1985) 173 Cal.App.3d 493, 500, 219 Cal.Rptr. 85.)[7] Defendant then had the opportunity to challenge the suspended four-year upper term with an appeal from the judgment. (People v. Latham (1988) 206 Cal.App.3d 27, 30-31, 253 Cal.Rptr. *918 379; People v. Harty, supra, at p. 500, 219 Cal.Rptr. 85.) When the time for appeal lapsed during the probationary period, the sentence became "final and nonappealable." (People v. Howard (1997) 16 Cal.4th 1081, 1084, 68 Cal.Rptr.2d 870, 946 P.2d 828; see also People v. Colado (1995) 32 Cal.App.4th 260, 262, 38 Cal.Rptr.2d 57.)
"`The revocation of the suspension of execution of the judgment'" brought "`the former judgment into full force and effect....' [Citations.]" (People v. Howard, supra, 16 Cal.4th 1081, 1087, 68 Cal.Rptr.2d 870, 946 P.2d 828.) Once execution of defendant's sentence commenced, upon revocation of probation the court had no jurisdiction to modify the unexecuted sentence to impose other than the suspended upper prison term. (Id., at pp. 1087-1088, 68 Cal.Rptr.2d 870, 946 P.2d 828; People v. Medina (2001) 89 Cal. App.4th 318, 322, 106 Cal.Rptr.2d 895; People v. Nubla (1999) 74 Cal.App.4th 719, 727-728, 88 Cal.Rptr.2d 265.) A "trial court may not reduce a sentence previously imposed and suspended." (People v. Wood (1998) 62 Cal.App.4th 1262, 1270, 73 Cal.Rptr.2d 308.)[8] The trial court consequently had no "power to modify an imposed sentence, long ago final in terms of appealability, execution of which the court had suspended during a probationary period." (People v. Howard, supra, at p. 1090, 68 Cal.Rptr.2d 870, 946 P.2d 828.) With the former judgment in full force and effect upon the revocation of defendant's probation, compliance with Blakely was not available to the trial court as an option.
Defendant's belated complaint with his imposed but suspended four-year upper term sentence is not cognizable in this appeal. (People v. Colado, supra, 32 Cal. App.4th 260, 262, 38 Cal.Rptr.2d 57; People v. Latham, supra, 206 Cal.App.3d 27, 30-31, 253 Cal.Rptr. 379; People v. Chagolla (1984) 151 Cal.App.3d 1045, 1049, 199 Cal.Rptr. 181.) And the principles of Blakely cannot retroactively invalidate the sentence imposed upon defendant by a final judgment.
Accordingly, the judgment is affirmed.
We concur: STEIN, Acting P.J., and MARGULIES, J.
NOTES
[*] George, C.J., did not participate therein.
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] Defendant has challenged only his sentence in this appeal, so we need not recite the facts pertinent to the underlying assault offense to which he pled no contest.
[3] We are of course aware that the effect of Blakely, supra, 124 S.Ct. 2531, on California sentencing law is already before the California Supreme Court in People v. Black, S126182, see 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 and People v. Towne, S125677.
[4] In Apprendi, supra, 530 U.S. 466, 468-469, 120 S.Ct. 2348, the court had earlier invalidated a New Jersey hate crime statute that authorized a 20-year enhanced sentence, despite the standard 10-year statutory maximum, if the judge found the crime had been committed "`with a purpose to intimidate ... because of race, color, gender, handicap, religion, sexual orientation or ethnicity.'" (Quoting N.J. Stat. Ann. § 2C:44-3(e).) The court reasoned in Apprendi that the due process clause and the Sixth Amendment right to a jury trial "indisputably entitle a criminal defendant to `a jury determination that [he] is guilty of every element of the crime with which he is charged beyond a reasonable doubt,'" despite the label of "sentencing factor" rather than "element" of the crime placed upon the finding by the Legislature. (Apprendi, supra, at p. 477, 120 S.Ct. 2348.) The court in Apprendi determined that, "[W]hen the term `sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict," and therefore must be submitted to the jury. (Id., at p. 494, fn. 19, 120 S.Ct. 2348.) The essential holding of Apprendi was: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.... `[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' [Citations.]" (Apprendi, supra, at p. 490, 120 S.Ct. 2348; see also People v. Scott (2001) 91 Cal.App.4th 1197, 1209, 111 Cal.Rptr.2d 318.)

Then in Ring v. Arizona, supra, 536 U.S. 584, 592-593, 122 S.Ct. 2428, a Sixth Amendment violation was found in an Arizona law that authorized the death penalty if the judge found one of 10 specified aggravating factors. The court declared that, "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact  no matter how the State labels it  must be found by a jury beyond a reasonable doubt.... A defendant may not be `expose[d] ... to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.'" (Ring v. Arizona, supra, at p. 602, 122 S.Ct. 2428.) As in Apprendi, the Arizona aggravating death penalty factors were considered to "operate as `the functional equivalent of an element of a greater offense,'" and thus the Sixth Amendment required "that they be found by a jury." (Ring v. Arizona, supra, at p. 609, 122 S.Ct. 2428.) The court expressed the fundamental principle that a jury trial is required on "any fact on which the legislature conditions an increase in ... maximum punishment." (Id., at p. 589, 122 S.Ct. 2428.)
[5] "Indeed, since Teague, the Court has yet to find a single rule that qualifies under the second exception," despite numerous opportunities to do so. (United States v. Sanders, supra, 247 F.3d 139, 148; see also Beard v. Banks, supra, 124 S.Ct. 2504, 2513; United States v. Mandanici (2d Cir.2000) 205 F.3d 519, 529.)
[6] The decisions in Apprendi and Ring, which the court amplified in Blakely, have uniformly been denied retroactive application. (See Schriro v. Summerlin, supra, 124 S.Ct. 2519, 2523-2527; Sepulveda v. United States, supra, 330 F.3d 55, 59-61; United States v. Brown (5th Cir.2002) 305 F.3d 304, 308-309; Cannon v. Mullin (10th Cir.2002) 297 F.3d 989, 994; Rees v. Hill (9th Cir.2002) 286 F.3d 1103, 1104; United States ex rel. Perez v. Warden, FMC Rochester (8th Cir.2002) 286 F.3d 1059, 1063; United States v. Sanchez-Cervantes, supra, 282 F.3d 664, 668-670; Jones v. Smith (9th Cir.2000) 231 F.3d 1227, 1236-1238; United States v. Sampson (D.Mass. 2003) 245 F.Supp.2d 327, 332.)
[7] Section 1237 sets forth the situations in which a criminal defendant may appeal: "An appeal may be taken by the defendant: [¶] (a) From a final judgment of conviction except as provided in Section 1237.1 and Section 1237.5. A sentence, an order granting probation, or the commitment of a defendant for insanity, the indeterminate commitment of a defendant as a mentally disordered sex offender, or the commitment of a defendant for controlled substance addiction shall be deemed to be a final judgment within the meaning of this section." (Italics added.)
[8] If imposition of sentence has instead been suspended and probation has been granted, while the judgment is final for the limited purpose of taking an appeal therefrom, for other purposes "`the criminal proceedings have been "suspended" prior to the imposition of judgment and pending further order of the court,'" so "no judgment has been entered and no sentence has been imposed." (People v. Orabuena (2004) 116 Cal.App.4th 84, 98, 10 Cal.Rptr.3d 99, citation omitted & 97 [10 Cal.Rptr.3d 99]; see also People v. Howard, supra, 16 Cal.4th 1081, 1087, 68 Cal.Rptr.2d 870, 946 P.2d 828.)