Filed 5/23/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037923 |
| Plaintiff and Appellant, | (Monterey County Super. Ct. No. SS080912) |
| v. | |
| JAMES RUSSELL SCOTT, | |
| Defendant and Respondent. | |

Defendant James Russell Scott pleaded no contest to the crime of possession of cocaine base for sale (Health & Saf. Code, § 11351.5) on May 7, 2009. The plea was entered on the condition that defendant be placed on felony probation with a suspended seven year prison sentence. Defendant admitted a violation of probation on November 1, 2011. The trial court then revoked defendant's probation and ordered defendant to serve his sentence in county jail under the Criminal Justice Realignment Act (hereafter the Act, or Realignment Act), which in part modified the provisions of Penal Code section 1170, subdivision (h)(1) and (2).[1] (Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 1.) The People appeal the trial court's order sentencing defendant to county jail. For the reasons set forth below, we affirm the judgment.

**PROCEDURAL BACKGROUND**[2]

On May 7, 2009, defendant pleaded no contest to a count of possession for sale of cocaine base (Health & Saf. Code, § 11351.5) and admitted the allegation of a prior drug-

---

[1] All further unspecified statutory references are to the Penal Code.

[2] The facts of the underlying case are not relevant to the current appeal.

related conviction (*id*. § 11370.2, subd. (a)), on the condition that he be placed on felony probation with a seven-year suspended prison sentence. On June 12, 2009, the trial court sentenced defendant to the California Department of Corrections and Rehabilitation (CDCR) for a term of seven years, suspended execution of sentence, and placed defendant on three years probation.

On October 4, 2011, the probation department filed a probation violation petition pursuant to section 1203.2.[3] Defendant admitted the violation on November 1, 2011. On December 13, 2011, the trial court indicated its intention to revoke defendant's probation and impose a seven-year sentence in the county jail pursuant to section 1170, subdivision (h), as amended by the Realignment Act. The People objected to sentencing defendant to a term in the county jail under section 1170, subdivision (h), stating on the record that "the People's position is that the defendant has been already sentenced." After a sidebar discussion, the court continued the hearing to give both parties time to consider the issue and file briefs on whether or not defendant should be sentenced to state prison or county jail.

The People filed a brief on this point on December 20, 2011. In essence, the People argued that section 1170, subdivision (h) applies prospectively to cases where defendants are sentenced on or after October 1, 2011. The People contended that since defendant was sentenced on June 12, 2009, before the effective date of section 1170, subdivision (h), the court had no power to sentence defendant to county jail.

On December 22, 2011, the trial court, after review of the People's arguments, revoked defendant's probation and sentenced him to serve a seven-year sentence in county jail. During the hearing, the trial judge stated that "generally I agree with the People's reasoning. And essentially, once a sentence is imposed, that sentence may not

---

[3] Defendant had already violated his probation twice before the October 4, 2011 petition, and both times his probation was revoked and reinstated by the trial court.

2

later be modified. [¶] However, the recent legislation, [section] 1170[, subdivision] (h), technically applies to all persons sentenced on or after October 1st of this year. [¶] Because the decision whether or not to reinstate the defendant on probation or not in this case is essentially a sentencing proceeding, the Court finds that under [section] 1170[, subdivision] (h) that this as it is a sentencing proceeding [*sic*], the defendant would qualify under [section] 1170[, subdivision] (h). [¶] In addition, because a commitment to county jail may be considered a less serious penalty than sentenced [*sic*] to state prison, although that may be subject to some argument . . . there's issues of equal protection under the law and the defendant should receive the benefit of any lesser penalty."

The People filed a timely notice of appeal over the imposed sentence on February 6, 2012.

## DISCUSSION

On appeal, the People raise the sole argument that the trial court erred in sentencing defendant to county jail under the newly amended provisions of section 1170, subdivision (h), effectuated by the Realignment Act. For reasons we explain below, we disagree with the People's argument, and affirm the judgment.

### *Standard of Review and Principles of Statutory Construction*

The question of whether or not the changes made to the Penal Code by the Legislature through the Realignment Act apply to those defendants whose sentence was imposed but suspended before the effective date of the Act, but whose sentence was executed *after* the effective date of the Act, is a question of law that we will review de novo. (*People v. Failla* (2006) 140 Cal.App.4th 1514, 1520.)

To properly construe a statute, we must " ' "ascertain the Legislature's intent so as to effectuate the purpose of the law." ' " (*People v. Canty* (2004) 32 Cal.4th 1266, 1276 (*Canty*).) The rules of statutory construction are well settled. "Our first task is to examine the language of the statute enacted as an initiative, giving the words their usual, ordinary meaning. [Citations.] If the language is clear and unambiguous, we follow the

3

plain meaning of the measure.  [Citations.]  '[T]he "plain meaning" rule does not prohibit a court from determining whether the literal meaning of a measure comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute.' "  (*Ibid.*)  "The language is construed in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]'  [Citations.]  The intent of the law prevails over the letter of the law, and ' "the letter will, if possible, be so read as to conform to the spirit of the act." ' "  (*Id.* at pp. 1276-1277.)  If the Legislature " 'has provided an express definition of a term, that definition ordinarily is binding on the courts.' "  (*Id*. at p. 1277.)

### *The Realignment Act*

The Realignment Act, enacted in 2011 and operative October 1, 2011, provides that certain defendants who would have received a sentence to prison prior to the enactment of the Act will now receive a sentence to county jail.  (§ 1170, subd. (h)(1)-(3).)  Certain defendants are excluded from this statutory scheme, including those who are required to register as sex offenders, or those who have prior serious or violent felony convictions.  (*Id*. subd. (h)(3).)  Under the sections of the Penal Code amended by the Realignment Act, defendants who plead guilty or are convicted of the same crime as defendant in this present case will now receive a term of commitment in county jail for their offenses.  Section 1170, subdivision (h)(6), specifies that the amendments made by the Act apply prospectively to those defendants sentenced on or after October 1, 2011.

### *Defendant was Properly Sentenced Under the Realignment Provisions*

The People contend that defendant was sentenced in 2009, when the trial court placed defendant on probation and suspended the execution of his seven-year prison sentence, and not when his sentence was actually executed in 2011 after his probation was revoked.  It is the People's position that the trial court violated section 1203.2 and

4

Rules of Court, rule 4.435(b)(2), when it sentenced defendant to county jail instead of state prison, as originally imposed by the trial court in 2009.[4]

Defendant argues that the Second Appellate District, Division 8's decision in *People v. Clytus* (2012) 209 Cal.App.4th 1001 (*Clytus*), is instructive. In *Clytus*, the court held that a trial court that executes a suspended sentence after October 1, 2011, does not possess the discretion to send a defendant to state prison if he or she qualifies for confinement in county jail under the Realignment Act. (*Id.* at p. 1004.) The factual situation in *Clytus* is analogous to defendant's present case, as the *Clytus* defendant was sentenced prior to October 1, 2011, but had execution of his sentenced suspended, and was placed on probation. (*Ibid.*) Thereafter, the *Clytus* defendant violated his probation, which he admitted during a hearing on October 14, 2011, after the Realignment Act became operative law. (*Ibid.*)

The *Clytus* court acknowledged the California Supreme Court's decision in *People v. Howard* (1997) 16 Cal.4th 1081 (*Howard*), which held that "once imposed, a suspended sentence may not later be modified." (*Clytus*, *supra*, 209 Cal.App.4th at p. 1005.) However, the court found that *Howard* neither bound the court in any way nor guided the court in its interpretation of the Realignment Act. (*Id.* p. 1006.) The *Clytus*

---

[4] Section 1203.2, subdivision (c), provides that "[u]pon any revocation and termination of probation the court may, if the sentence has been suspended, pronounce judgment for any time within the longest period for which the person might have been sentenced. However, if the judgment has been pronounced and the execution thereof has been suspended, *the court may revoke the suspension and order that the judgment shall be in full force and effect*. In either case, the person shall be delivered over to the proper officer to serve his or her sentence, less any credits herein provided for." (Italics added.) Rules of Court, rule 4.435(b), similarly states that: "(b) On revocation and termination of probation under section 1203.2, when the sentencing judge determines that the defendant will be committed to prison: [¶] . . . [¶] (2) If the execution of sentence was previously suspended, *the judge must order that the judgment previously pronounced be in full force and effect* and that the defendant be committed to the custody of the Secretary of the Department of Corrections and Rehabilitation for the term prescribed in that judgment." (Italics added.)

5

court concluded that under the plain meaning of section 1170, subdivision (h)(6), "any sentence executed on or after October 1, 2011, for a felony that is not prison eligible shall be served in county jail under section 1170." (*Clytus*, *supra*, at p. 1006.) The court further noted that nowhere in the statute was there any indication that the "Legislature intended a different result if a prison sentence was imposed and suspended before October 1, 2011, and executed on or after October 1, 2011." (*Id.* at pp. 1006-1007.) The court made the finding that though the *Clytus* defendant was sentenced prior to October 1, 2011, he was *still* a " 'person sentenced' " for the purposes of section 1170, subdivision (h)(6), when the court executed the suspended sentence after October 1, 2011. (*Clytus*, *supra*, at p. 1007.)

In coming to its conclusion, the *Clytus* court in part looked to the intent of the Legislature in passing the Realignment Act. (*Clytus*, *supra*, 209 Cal.App.4th at pp. 1006-1007.) Section 1170, subdivision (h)(6), on its face seems unambiguous, but an application of the section to the factual situation presented here requires an interpretation of what the Legislature meant by those "sentenced" on or after the effective date of the statute. We find that the intent of the Legislature proscribes an interpretation of the statute such that the provisions of the Act would apply to individuals in defendant's situation, where probation was granted, revoked, and the previously suspended sentence executed after the effective date of the Act.

The Legislature enacted the Realignment Act in response to growing rates of recidivism with the specific goal of increasing public safety while reducing costs. This intent was clear, as the Legislature's stated purpose for enacting the Realignment Act is codified in section 17.5. (Stats. 2011, ch. 39, § 5.) First, the Legislature declared that "[d]espite the dramatic increase in corrections spending over the past two decades, national reincarceration rates for people released from prison remain unchanged or have worsened. National data show that about 40 percent of released individuals are

6

reincarcerated within three years.  In California, the recidivism rate for persons, who have served time in prison, is even greater than the national average."  (§ 17.5, subd. (a)(2).)

Further, the Legislature declared that "[r]ealigning low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs, which are strengthened through community-based punishment, evidence-based practices, improved supervision strategies, and enhanced secured capacity, will improve public safety outcomes among adult felons and facilitate their reintegration back into society."  (§ 17.5, subd. (a)(5).)  The Realignment Act was therefore enacted with this particular framework and these particular purposes in mind.

These intentions are bolstered by the Legislative Analyst's Office report published on criminal justice realignment.  In its report, the Legislative Analyst's Office analyzed that some of the benefits from realigning low-level offenders who commit certain drug-related crimes, like defendant here, to county jail instead of prison, are derived from the fact that state programs for drug offenders are lacking compared to community-based programs, as demonstrated by the efficacy of Proposition 36 drug probation.  (Legis. Analyst's Off., 2009-2010 The Budget Analysis Series, Criminal Justice Realignment (2009-2010 Reg. Sess.) Jan. 27, 2009, pp. 11-15.)[5]  The report also outlined that consolidating responsibility for these offenders to local authorities would foster innovation, as the state itself faces inherent obstacles in managing a substance abuse program in a prison setting.  (*Id.* at p. 13.)  The report additionally stated that realigning

_____

[5] "To determine the purpose of legislation, a court may consult contemporary legislative committee analyses of that legislation, which are subject to judicial notice." (*In re J.W.* (2002) 29 Cal.4th 200, 211.)  The Legislative Analyst's Office report, and the legislative history of the Realignment Act, is not a part of the record before us on appeal. Nonetheless, all are official government documents that are the proper subject of judicial notice.  (Evid. Code, §§ 452, subd. (c), 459.)  We therefore take judicial notice of the legislative history of the Realignment Act on our own motion.

low-level offenders would prioritize state prison spaces for serious and violent offenders. (*Id.* at p. 14.)

Notably, in passing the Act, the Legislature codified that the amendments made to the Penal Code were to be made prospective. In Assembly Bill No. 109, the Legislature initially included a provision, then located in section 1170, subdivision (h)(5), which specified that the amendments made to the statute would be made prospective only to those defendants sentenced on or after July 1, 2011. (Stats. 2011, ch. 15, § 450.) The Senate Rules Committee's third reading for Assembly Bill No. 109 on March 14, 2011, stated changes made by the Act would be "applied prospectively beginning July 1, 2011." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 109 (2011-2012 Reg. Sess.) Mar. 14, 2011, p. 4.)

Later, the language in section 1170, subdivision (h)(5) was renumbered to subdivision (h)(6) by Assembly Bill No. 117, to its present form where it now mandates that the changes made by the Realignment Act will apply prospectively to all those sentenced on or after October 1, 2011. (Stats. 2011, ch. 39, § 27.) In its analysis of the amendments made to the legislation, the Senate Rules Committee's third reading of Assembly Bill No. 117 stated that the operative date of the Act would change from July 1, 2011, to October 1, 2011. (Sen. Rules Com. Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 117 (2011-2012) as amended Jun. 28, 2011, p. 2.) From this, we glean that the Legislature intended that the changes to section 1170 be made prospective, which is why the Legislature included the language in section 1170, subdivision (h)(6). The question is thus whether or not the Legislature intended this prospective application to include defendants in the situation presented here.

We find that since the legislative intent of the Realignment Act was to direct certain low-level offenders from state prison to county jail and other community-based programs prospectively after October 1, 2011 (§ 1170, subd. (h)(6)), the Act is properly interpreted as to realign offenders in defendant's situation. Namely, we find the

8

provisions of the amended statute should apply to those qualifying defendants who committed a crime now subject to a sentence in county jail *prior* to the passage of the Realignment Act, were placed on probation after execution of sentence was suspended, violated probation, and whose sentence was then executed *after* October 1, 2011. This interpretation satisfies the stated purposes of realignment: reducing recidivism by redirecting low-level felons, such as defendant here, to county and other locally-based programs over state programs. This interpretation also furthers the Legislature's intent to apply the Act prospectively, to apportion prison space to more serious or violent offenders, and to reduce recidivism by directing offenders to locally-based programs. To draw a distinct line barring defendants whose sentence was executed after the effective date of the Act, but whose sentence was imposed prior to the act, from serving their terms in county jail fails to promote the Legislature's stated goals.[6]

We do not agree with the People's assertion that the California Supreme Court's decision in *Howard* controls. In *Howard*, the court determined that once a sentence is imposed, even if the execution of the sentence is thereafter suspended, that sentence may not be modified by the trial court. (*Howard*, *supra*, 16 Cal.4th at p. 1085.) "[I]f the court has actually imposed the sentence, and the defendant has begun a probation term representing acceptance of that sentence, then the court has no authority, on revoking probation, to impose a lesser sentence at the precommitment stage." (*Id.* at p. 1095.) Here, the People's argument is that once the sentence was imposed--seven years in state

---

[6] Other amendments made to the Penal Code by the Realignment Act also underscore the Legislature's intent. For example, sections 3000.08 and 3451, added by the Legislature to address postrelease supervision for felony offenders released on or after October 1, 2011, specify that unless a parolee committed certain offenses, such as a serious or violent felony, the parolee would be subject to postrelease supervision by county authorities, not state authorities. Again, this furthers the legislative intent to shift responsibility for certain felony offenders, whether it be for postrelease supervision or for incarceration, from the state to local governments after October 1, 2011.

prison--the trial court had no authority to modify this sentence such that defendant would be sentenced to seven years in *county jail*.

As the court in *Howard* explained, there is a vital difference between a trial court suspending imposition of a sentence and suspending execution of a sentence prior to placing a defendant on probation. (*Howard*, *supra*, 16 Cal.4th at p. 1087.) In the former, no judgment has been imposed, and the defendant is only subject to the agreed-upon terms of probation. (*Ibid.*) In the latter, a judgment has been imposed, it is only that the execution of the sentence has been suspended. (*Ibid.*) Once probation is revoked, the judgment comes " 'into full force and effect' " (*ibid.*) such that the former sentence, with no modifications made by the trial court, will be executed. (*Id.* at pp. 1087-1088.)

In defendant's case here, the trial court suspended execution of defendant's seven-year state prison sentence in 2009. Under the rationale set forth in *Howard*, once the trial court revoked defendant's probation in 2011, the full force of the prior judgment should have taken effect. However, what the *Howard* court did not contemplate is the situation that is laid out before us here, in which through a legislative change of law the sentence proscribed is now a term in jail instead of prison. Since "cases are not authority for propositions not considered," we find that *Howard* does not control in this situation. (*People v. Brown* (2012) 54 Cal.4th 314, 330 (*Brown*).) Here, the trial court is not modifying a prior suspended sentence by reducing or otherwise ameliorating the term of commitment. Instead, it is following the letter of the new law.

We note that not all courts have followed this same rationale. The Fourth Appellate District recently published an opinion holding that *Howard* and section 1203.2, subdivision (c) control as the Legislature did not expressly abrogate or amend these sections when it enacted section 1170. (*People v. Kelly* (April 10, 2013, E055263) __ Cal.App.4th __ [2013 WL 1449756] (*Kelly*).) It is true that when the Legislature passes a new law, it is presumed to do so in light of existing cases and statutes. (*People v. Yartz* (2005) 37 Cal.4th 529, 538.) However, as we previously discussed *ante*, *Howard* is not

10

instructive in this particular case. It follows that simply because the Legislature did not expressly abrogate section 1203.2 or *Howard* when enacting the provisions of the Realignment Act does not necessarily render the amended portions of section 1170, subdivision (h), inapplicable to defendants in our situation. We therefore respectfully disagree with the *Kelly* court's conclusion in that regard.

Additionally, in *People v. Gipson* (Feb. 28, 2013, B241551) __ Cal.App.4th __ [2013 WL 746637] (*Gipson*), Division 2 of the Second Appellate District determined that a defendant is "sentenced" when the sentence is imposed, not when it is executed, for purposes of interpreting section 1170, subdivision (h)(6).[7] The court in *Gipson* disagreed with the holding in *Clytus*, and found *Howard* persuasive. In so doing, the *Gipson* court found that a defendant is sentenced when the judgment is imposed, but suspended, a defendant is not sentenced again when the sentence is executed. The analysis in *Gipson* focused primarily on the interpretation of the word "sentenced" in section 1170, subdivision (h)(6). (*Gipson*, *supra*, at p. *3.)

If we follow the rationale of the *Gipson* court, the resolution of this present case depends on what the Legislature intended when it limited the application of the Realignment Act to those defendants "sentenced" on or after the operative date of October 1, 2011. (§ 1170, subd. (h)(6).) We agree that the definition of "sentenced" intended by the Legislature is the crux of this particular issue. However, we must respectfully disagree with the *Gipson* court's interpretation of the Legislature's intent as

---

[7] The Fourth Appellate District also recently published an opinion adopting the rationale set forth in *Gipson*, concluding that the provisions of the Realignment Act do not apply to a defendant who was sentenced and had execution of sentence suspended prior to the effective date of the Realignment Act, but whose sentence was executed after October 1, 2011. (*People v. Mora* (Mar. 29, 2013, D062007) __ Cal.App.4th __ [2013 WL 1277829].) Both *Mora* and *Kelly* were decided by the Fourth Appellate District, though *Mora* was decided by Division 1 of the Fourth Appellate District and *Kelly* was decided by Division 2 of the Fourth Appellate District.

11

to the word "sentenced." In *Gipson*, the court determined that *Howard* controlled and that "imposition of sentence is equated with entry of a final judgment" and since at that point "everything about a defendant's sentence is prescribed[,] [i]t would be illogical to say he has not been sentenced."[8] (*Gipson*, *supra*, __ Cal.App.4th __ at p. *3.) The court therefore concluded that to construe that "sentenced" meant that a sentence must be both imposed *and* executed would force extra meaning on the language of the statute, which it is not susceptible to. (*Ibid.*)

We do not find that such an interpretation would force extra meaning into the statutory language. Section 1170, subdivision (h)(6) specifies that the provisions of the Realignment Act would only apply to those who would be sentenced on or after October 1, 2011. If we were to examine this issue in a vacuum, without reference to the Legislature's intent, we would agree with the People that this definition would exclude individuals such as defendant here as he was "sentenced" prior to October 1, 2011. However, given the Legislature's intent was to reduce recidivism by redirecting low-level offenders to county and community-based programs, we find that such an interpretation

---

[8] The *Gipson* court similarly found that *People v. Chagolla* (1984) 151 Cal.App.3d 1045 (*Chagolla*), bolstered its argument. In *Chagolla*, the court noted that "where sentence is imposed and execution thereof suspended, an appeal may be taken from the sentence to state prison as the final judgment or an order granting probation as an order made after judgment." (*Id.* at p. 1049.) Accordingly, the trial court is "without jurisdiction to modify or change the final judgment and is required to order into execution that judgment after revocation of probation. The attempted modification of [a] previously imposed sentence [is] beyond the trial court's jurisdiction and subject to review." (*Ibid.*) The *Gipson* court surmised that under the authority provided by *Chagolla* and *Howard*, "[h]ere, we fail to see how the trial court had jurisdiction to do anything other than order the execution of the previously imposed prison sentence." (*Gipson*, *supra*, __ Cal.App.4th at p. *3.) We find *Chagolla* is not instructive for similar reasons that we found *Howard* unpersuasive, as *Chagolla* concerned a trial court's improper modification of a suspended sentence, and did not contemplate a modification or change made due to an amendment to the statutory sentencing scheme. (*Chagolla*, *supra*, at pp. 1047-1048.)

of the word "sentenced" does not comport with our understanding of the statutory scheme of the Realignment Act. As the reviewing court, we not only look at the plain meaning of the statute, but at the spirit and intent of the Act, which we find is best understood as codifying the Legislature's intent to direct offenders in defendant's situation to county-based programs. (See *Canty*, *supra*, 32 Cal.4th at pp. 1276-1277 ["The intent of the law prevails over the letter of the law, and ' "the letter will, if possible, be so read as to conform to the spirit of the act." ' "].) Placing individuals, such as defendant, to prison over county jail when he or she would unequivocally be sentenced to county jail under the amended provisions of section 1170, subdivision (h), produces an anomalous situation that frustrates the purpose behind realignment.

We also do not agree with the People's contention that *People v. Amons* (2005) 125 Cal.App.4th 855 (*Amons*) is instructive. In *Amons*, the appellate court held the sentencing rules announced by *Blakely v. Washington* (2004) 542 U.S. 296 regarding the imposition of upper-term sentences did not apply to a criminal defendant whose sentence was imposed prior to the published date of the *Blakely* opinion, but executed after the published date of the opinion. (*Amons*, *supra*, at p. 860.) There, the appellate court noted that " '[w]hen a decision of [the United States Supreme] Court results in a "new rule," that rule applies to all criminal cases still pending on direct review.' (*Schriro v. Summerlin* (2004) 542 U.S. 348, 350-352.)" (*Id.* at p. 863.) The appellate court then concluded that the sentencing provisions in *Blakely* was not retroactive to defendants in Amons' situation, who was sentenced, had execution of sentence suspended, was placed on probation, and whose sentence was later executed after revocation of probation. (*Id.* at pp. 860, 869-870.) Here, unlike *Amons*, we are not concerned the retroactive application of a change in law due to a decision from our nation's highest court. We are concerned with a *legislative* change in the law, and the Legislature's intent in amending the Penal Code.

13

Given our understanding of the Legislature's intent in passing the Realignment Act, and it's intent in including the language in section 1170, subdivision (h)(6), we conclude that the benefits of the Act are properly construed to apply to the individuals in defendant's situation.

### *Section 1170, subdivision (h)(6) and the* Estrada *Rule*

The People argue that the Legislature's inclusion of section 1170, subdivision (h)(6), functions as an express saving clause that prohibits retroactive application of the Realignment Act under the *Estrada* rule. We agree with the People's interpretation of the subdivision as a saving clause, but disagree with the People's understanding of what constitutes a prospective-only application of the Realignment Act.

The *Estrada* rule is derived from the California Supreme Court's decision in *In re Estrada* (1965) 63 Cal.2d 740, 742. In *Estrada*, the Supreme Court concluded that if the Legislature amends a statute to mitigate the punishment for a specific crime, it must be assumed that the Legislature intended that the statute be retroactively applied to all defendants whose judgments of conviction were not final at the time of the statute's operative date if there is no other evidence to the contrary. (*Id*. at pp. 742-748; *Brown supra*, 54 Cal.4th at p. 323.) The rule articulated by *Estrada* is inapplicable when the statute at hand contains an express saving clause, or its functional equivalent, which mandates a prospective application of the statute. (See *People v. Nasalga* (1996) 12 Cal.4th 784, 793.) The People argue that section 1170, subdivision (h)(6), functions as an express saving clause.

We agree that setting the operative date of the statute to October 1, 2011, and further specifying that the changes to section 1170 shall apply only to those defendants sentenced on or after October 1, 2011, functions as a saving clause. It is clear that it was not the Legislature's intention to retroactively apply the amended portions of section 1170 to all defendants who may qualify for sentences in county jail, such as those defendants who were already serving time in prison for their convicted offenses prior to

14

October 1, 2011. However, for the reasons we outlined above, it seems equally clear that the Legislature's goal behind enacting the Act was to shift low-level offenders convicted of certain felonies from state to county supervision in an effort to reduce recidivism and to conserve state fiscal resources. The interpretation most in line with this intent is to read section 1170, subdivision (h)(6), as including individuals in defendant's situation within the scope of the Realignment Act.

So while we agree with the People's contention that section 1170, subdivision (h)(6) functions as an express saving clause, we do not believe the section acts to exclude those in defendant's situation from sentencing under the Realignment Act.

### *The People's Equal Protection Argument*

Lastly, the trial court indicated during the sentencing hearing that it believed that *not* sentencing defendant to county jail may be a violation of defendant's equal protection rights. Hence, the People argue here on appeal that sentencing defendant to prison would not violate the principles of equal protection. However, since we determine that defendant should be sentenced to county jail and not prison under the Realignment Act, we need not reach the issue of whether or not a sentence to prison would actually violate defendant's right to equal protection under the law.

### DISPOSITION

The judgment is affirmed.

_____

Premo, J.

WE CONCUR:

_____

Rushing, P.J.

_____

Elia, J.

15

| | |
|---|---|
| Trial Court: | Monterey County Superior Court<br>Superior Court No. SS080912 |
| Trial Judge: | Hon. Mark E. Hood |
| Counsel for Plaintiff/Appellant:<br>The People | Kamala D. Harris<br>Attorney General<br><br>Dane R. Gillette<br>Chief Assistant Attorney General<br><br>Gerald A. Engler<br>Senior Assistant Attorney General<br><br>Laurence K. Sullivan<br>Supervising Deputy Attorney General<br><br>Bridget Billeter<br>Deputy Attorney General |
| Counsel for Defendant/Respondent:<br>James Russell Scott | Sixth District Appellate Program<br>Dallas Sacher<br><br>Under appointment by the Court of Appeal<br>Laura Burgardt |

People v. Scott