Filed 12/3/19

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| In re<br><br>WILLIAM MILTON,<br><br>on Habeas Corpus. | B297354<br><br>(Los Angeles County<br>Super. Ct. No. TA039953) |


ORIGINAL PROCEEDINGS on petition for writ of habeas corpus. Petition denied.

Brad Kaiserman, under appointment by the Court of Appeal, for Petitioner.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael C. Keller, Acting Supervising Deputy Attorney General and Eric J. Kohm, Deputy Attorney General for Respondent.

# INTRODUCTION

In 1999 a California jury convicted William Milton of second degree robbery. In a bifurcated proceeding, Milton admitted he had two prior felony convictions in Illinois. The court ruled the out-of-state convictions qualified as serious felonies for purposes of the three strikes law (Pen. Code, §§ 667, subds. (b)-(j), 1170.12).[1] Milton appealed, this court affirmed, and the Supreme Court denied review.

Eighteen years after his conviction, Milton filed this petition for a writ of habeas corpus, contending he is entitled to resentencing under the California Supreme Court's decision in *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*), which held a court considering whether to impose a sentence enhancement based on a prior conviction may not make factual findings about the defendant's conduct to impose the enhancement. Because *Gallardo* does not apply retroactively to Milton, whose conviction became final long ago, we deny the petition.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *Milton Is Convicted of Simple Robbery and Armed Robbery in Illinois*

Years before a jury in California convicted Milton of the robbery offense that gives rise to this petition, Milton was convicted of two crimes, simple robbery and armed robbery, in Illinois. The prosecution in the Illinois action alleged in an

---

[1] Statutory references are to the Penal Code.

information that on February 2, 1987 Milton committed simple robbery by taking a wallet and $337 from his victim "by threatening the imminent use of force."  Underneath this allegation in the information, a handwritten note stated, "Class II.  [The victim] left [the market] after cashing his check.  Stopped.  Money demanded.  [Defendant] had a gun.  $338.  [Defendant] admitted to Wkgn PD he took money."  The Illinois prosecution also alleged that on February 9, 1987 Milton committed armed robbery by taking $40 from his victim, "while ar[med] with a dangerous weapon, a gun . . . by threatening the imminent use of force."

Milton pleaded guilty to the simple robbery charge, and an Illinois jury found Milton guilty of the armed robbery charge.  The Illinois court held a combined sentencing hearing for the two convictions.  For the armed robbery conviction, the Illinois prosecutor recounted the testimony of the victim as follows:  "Mr. Milton got out of the car, pointed a gun at [the victim], and threatened him, forced him into the car where he was robbed of his goods."  The court stated to Milton, "You used a gun . . . .  You stopped the victim . . . .  You forced this individual into the automobile."  For the simple robbery conviction, the Illinois prosecutor stated Milton approached the victim "with a weapon, threaten[ed] him, and . . . [the victim] lost his entire paycheck . . . to Mr. Milton."  The Illinois court stated it had received "stipulated facts" for the case, which "indicated that the victim . . . left the . . . [market] after cashing his check.  He was stopped.  Money was demanded from the victim by . . . Milton . . . who possessed a handgun.  And the sum of three hundred thirty-eight dollars was taken from the victim . . . ."

Before the Illinois court pronounced sentence, the court reiterated Milton's use of a firearm: "In each of the two respective offenses you deliberately held a gun—a loaded gun—upon an individual. . . . I'm going to tell you that he who participates in an offense of violence against another with a gun is going to be punished. And the sentence I am going to give is for the purpose of punishment."

B.    *Milton Is Convicted of Robbery in California*

On September 6, 1998 Milton committed another robbery, this time in California. Milton stopped a teenager on a street in Los Angeles at night and demanded money, "behaved as if he was armed with a weapon," and took money and a new pair of jeans. The victim identified Milton as the robber, and a police officer testified Milton admitted to the robbery. The jury found Milton guilty of second degree robbery. (*People v. Milton* (May 10, 2000, B131757) [nonpub. opn.].)

C.    *The Trial Court Sentences Milton in California*

In a bifurcated proceeding Milton admitted he suffered two prior felony convictions in Illinois, one for armed robbery and one for simple robbery. Milton admitted that the armed robbery conviction was a serious felony under section 667, subdivision (a)(1), and that it qualified as a "five-year prior." Milton denied the allegation the simple robbery conviction was a serious or violent felony that made it a "strike." The California prosecutor acknowledged that the Illinois simple robbery conviction was not a serious or violent felony under the three strikes law because robbery under Illinois law, unlike robbery under California law, did not require the specific intent to permanently deprive the

person of the property. The California prosecutor argued, however, that certified documents from the Illinois court "indicate that [Milton] used a gun during the [simple] robbery" and that "[t]his information, therefore, provides this Court with the ability to determine that this particular conviction is a strike."

Counsel for Milton argued the Illinois court documents, at best, showed Milton "possessed" a gun, and nothing in the record showed he "actually personally used" a gun. The prosecutor argued California law allowed the trial court "to look behind the record" to determine whether Milton used a gun in the simple robbery. The trial court ruled, "I see nothing wrong with going . . . beyond the court record . . . to determine what really happened. And in doing that, I am satisfied that the defendant used a gun in both . . . these prior robberies. And . . . I am satisfied that they're both strikes." The trial court imposed a term of 25 years to life, plus five years under section 667, subdivision (a)(1).

D.     *Milton Appeals and Files Habeas Petitions*

Milton appealed his judgment of conviction. He contended, among other things, the trial court erred in finding his Illinois felony conviction for simple robbery qualified as a serious or violent felony under the three strikes law.[2] This court affirmed the judgment, and the Supreme Court denied review. (*People v.*

---

[2]     In his direct appeal, Milton did not challenge the trial court's finding the Illinois armed robbery conviction was a serious or violent felony under the three strikes law.

*Milton, supra*, B131757, review denied, July 19, 2000, S089153.) Milton subsequently filed five petitions for a writ of habeas corpus in this court, each of which was denied.

On January 11, 2016 Milton filed a petition in the California Supreme Court (S231762), contending the trial court erred in finding his two Illinois convictions were serious felonies under the three strikes law. On March 23, 2016 the Supreme Court denied the petition "without prejudice to any relief to which [Milton] might be entitled after this court decides *People v. Gallardo*, S231260," a case then pending in the Supreme Court.

### E. *Milton Files This Petition*

On December 29, 2017, following the Supreme Court's decision in *Gallardo*, Milton filed this petition, arguing his "Illinois priors cannot be used as strikes."[3] The Supreme Court issued an order directing the Department of Corrections and Rehabilitation to show cause, returnable in this court, "why [Milton] is not entitled to relief pursuant to *People v. Gallardo* (2017) 4 Cal.5th 120 . . . , and why *Gallardo* should not apply retroactively on habeas corpus to final judgments of conviction."

---

[3] Milton admitted the armed robbery conviction was a serious felony under section 667, subdivision (a)(1), and he does not argue in his petition the sentencing court erred in imposing a five-year enhancement under that statute.

**DISCUSSION**

A.     *California Sentencing Laws for Serious Felonies*

Under sections 667, subdivisions (b)-(j), and 1170.12, a "'serious felony' conviction is . . . a prior strike for purposes of the Three Strikes law . . . ."[4] (*Gallardo, supra*, 4 Cal.5th at p. 125.)  Section 667, subdivision (d)(2), provides that a prior conviction in another jurisdiction "shall constitute a prior conviction of a particular serious and/or violent felony if the prior conviction in the other jurisdiction is for an offense that includes all of the elements of a particular violent felony . . . .  or serious felony as defined in subdivision (c) of Section 1192.7."  Section 1192.7, subdivision (c)(8), provides that "'serious felony'" includes "any felony in which the defendant personally uses a firearm." (See *People v. Briceno* (2004) 34 Cal.4th 451, 463 ["[s]ection 1192.7, subdivision (c)(8) makes any felony not otherwise enumerated in section 1192.7, subdivision (c) a serious felony if the defendant personally uses a firearm"].)

Milton's Illinois convictions for simple robbery and armed robbery were not serious felony convictions within the meaning of the three strikes law under section 667, subdivision (d)(2). Section 211 states, "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  An essential element of the California crime of robbery is "the intent to permanently deprive the person of the

---

[4]     The three strikes law "articulates an alternative sentencing scheme for the current offense rather than an enhancement." (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 527; accord, *In re Edwards* (2018) 26 Cal.App.5th 1181, 1187.)

7

property." (*People v. Jackson* (2016) 1 Cal.5th 269, 343.) The definitions of robbery and armed robbery in Illinois do not include this specific intent element; robbery and armed robbery are general intent crimes in Illinois. (*People v. Jamison* (2001) 197 Ill.2d 135, 161; *People v. Lee* (1998) 294 Ill.App.3d 738, 743.) But if Milton personally used a firearm in the commission of the Illinois felonies, those prior convictions would be convictions for serious felonies under section 1192.7, subdivision (c)(8).[5] (See *People v. Le* (2015) 61 Cal.4th 416, 425 ["subdivision (c)(8) of section 1192.7 . . . applies to 'any felony in which the defendant personally uses a firearm'"].)

B. *California Sentencing Law Before* Gallardo

When the trial court sentenced Milton in 1999, California law permitted trial courts to examine "the entire record of the conviction to determine the substance of the prior foreign conviction." (*People v. Guerrero* (1988) 44 Cal.3d 343, 355; see *People v. Woodell* (1998) 17 Cal.4th 448, 453.) In 2000 the United States Supreme Court decided *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348] (*Apprendi*), which held a jury must make the factual determination whether the defendant was subject to a state hate crime law that provided for enhanced penalties if the defendant committed certain offenses "with the purpose to intimidate an individual . . . because of race, color, gender, handicap, religion, sexual orientation or ethnicity." (*Id.* at pp. 469-470, 490.) The United States Supreme Court held that, under the Sixth Amendment and the Due Process Clause of

---

[5] For the offense of armed robbery, Illinois does not require the jury to find the defendant used a gun. (See Ill.Rev.Stats., ch. 38, § 18-2(a).)

the Fourteenth Amendment to the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at pp. 477, 490.)

California courts initially held *Apprendi* did not apply to a trial court's factfinding in connection with determining whether a defendant's prior convictions subjected the defendant to increased penalties. (See, e.g., *People v. Thomas* (2001) 91 Cal.App.4th 212, 222 [defendant has no federal constitutional right to a jury trial on factual issues related to "recidivism"].) In 2006 the California Supreme Court decided *People v. McGee* (2006) 38 Cal.4th 682 (*McGee*), where the trial court examined the record of two prior robbery convictions the defendant had received in Nevada to determine if those convictions were serious felonies under section 667, subdivision (a)(1), and the three strikes law. (*Id.* at p. 688.)[6] The trial court in *McGee* reviewed a preliminary hearing transcript and other court records in each of the Nevada convictions. The trial court ruled the prior convictions satisfied the elements of robbery under California law and, therefore, qualified as serious felonies. (*Id.* at p. 690.) The California Supreme Court in *McGee* held the trial court's inquiry did not violate *Apprendi* because "*Apprendi* was confined to the elements of the *charged offense*—not, as here, to the adjudication of aspects of the defendant's criminal *past*." (*Id.* at p. 697.)

---

[6] Nevada law defined robbery more broadly than California law because Nevada law required only general criminal intent, and as stated California law required the specific intent to permanently deprive another person of property. (*McGee*, *supra*, 38 Cal.4th at p. 688.)

C.    Gallardo

In *Gallardo* a jury convicted the defendant of robbery and other offenses, and the trial court increased the defendant's sentence "on the ground that defendant had previously been convicted of a 'serious felony' under . . . section 667, subdivision (a), that was also a strike for purposes of the 'Three Strikes' law." (*Gallardo, supra*, 4 Cal.5th at pp. 123, 126.)  The trial court found the defendant's prior conviction for assault with a deadly weapon or with force likely to produce great bodily injury under section 245, subdivision (a)(1), was a serious felony conviction, even though the statutory definition for the crime "swe[pt] more broadly than the definition of 'serious felony.'"[7]  (*Gallardo*, at p. 123.)  The trial court reviewed the preliminary hearing transcript from the underlying prior conviction and concluded the defendant "had, in fact, been convicted of 'assault with a deadly weapon; to wit, knife.'"  (*Id.* at p. 126.)

---

[7]    "An assault conviction qualifies as a serious felony if the assault was committed with a deadly weapon [citation], but not otherwise."  (*Gallardo, supra*, 4 Cal.5th at p. 123.)  "[S]ection 245, subdivision (a), has since been amended to separate the prohibitions against assault 'with a deadly weapon' and assault 'by any means of force likely to produce great bodily injury' into different subdivisions." (*Gallardo*, at p. 125, fn. 1.)  "The reason for the change was to make it easier going forward to determine whether a defendant's prior convictions for aggravated assault under section 245, subdivision (a), involved conduct subjecting the defendant to certain recidivist provisions, because enhancements such as the 'Three Strikes' law applied to prior assault convictions only when those convictions involved the use of a deadly weapon."  (*In re C.D.* (2017) 18 Cal.App.5th 1021, 1028.)

The California Supreme Court held the trial court's factual findings regarding the conduct underlying the defendant's prior conviction violated the defendant's Sixth Amendment jury trial right. (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) Citing two post-*Apprendi* decisions by the United States Supreme Court, *Descamps v. United States* (2013) 570 U.S. 254 [133 S.Ct. 2276] (*Descamps*) and *Mathis v. United States* (2016) ___ U.S. ___ [136 S.Ct. 2243] (*Mathis*), the California Supreme Court decided it was "time to reconsider *McGee*." (*Gallardo*, at p. 124.) The California Supreme Court explained *Descamps* and *Mathis* made "clear that when the criminal law imposes added punishment based on findings about the facts underlying a defendant's prior conviction, '"[t]he Sixth Amendment contemplates that a jury— not a sentencing court—will find such facts, unanimously and beyond a reasonable doubt."'" (*Gallardo*, at p. 124, citing *Descamps*, at p. 269.) The California Supreme Court held a "court considering whether to impose an increased sentence based on a prior qualifying conviction may not determine the 'nature or basis' of the prior conviction based on its independent conclusions about what facts or conduct 'realistically' supported the conviction." (*Gallardo*, at p. 136.) "[R]ather," the California Supreme Court held, "[t]he court's role is . . . limited to identifying those facts that were established by virtue of the conviction itself." (*Ibid*.) The California Supreme Court disapproved *McGee* "insofar as it suggest[ed] that the trial court's factfinding was constitutionally permissible." (*Gallardo*, at p. 125.)

The People concede the trial court in this case erred in relying on its review of the record of the proceedings in Milton's two Illinois felony cases to find Milton used a gun in the

11

commission of those felonies, a finding the trial court used to increase Milton's sentence under the three strikes law. The record contained a transcript of the sentencing hearing, in which the Illinois court referred to "stipulated facts" and stated Milton used a gun in both robberies. These factual determinations, which served as the basis for increasing Milton's sentence, violated Milton's Sixth Amendment right to a jury trial. (See *Gallardo*, *supra*, 4 Cal.5th at p. 136.) The issue in this petition is whether *Gallardo* applies retroactively to Milton, whose appeal became final years ago.[8]

## D. Gallardo *Does Not Apply Retroactively*

### 1. *Two Tests: One Federal, One State*

The California "Supreme Court has not articulated a single test to determine when and under what circumstances a decision should be given retroactive effect to convictions that are final on appeal." (*In re Hansen* (2014) 227 Cal.App.4th 906, 916.) In *Teague v. Lane* (1989) 489 U.S. 288, 307 [109 S.Ct. 1060] (*Teague*) the United States Supreme Court established the test most

---

[8] "It has long been the rule in federal and California courts that a case is not final for purposes of determining the retroactivity and application of a new decision addressing a *federal* constitutional right until direct appeal is no longer available in the state courts, and the time for seeking a writ of certiorari has lapsed or a timely filed petition for that writ has been denied." (*In re Richardson* (2011) 196 Cal.App.4th 647, 664.) The California Supreme Court denied review of Milton's direct appeal on July 19, 2000. Therefore, Milton's judgment of conviction became final on October 19, 2000.

California courts apply when deciding whether a new rule interpreting federal rights applies retroactively.  (See, e.g., *In re Gomez* (2009) 45 Cal.4th 650, 656 [applying *Teague* to decide whether *Cunningham v. California* (2007) 549 U.S. 270 [127 S.Ct. 856] (*Cunningham*), which held a jury must find the aggravating factors that make a defendant eligible for an upper-term sentence, is retroactive]; *In re Moore* (2005) 133 Cal.App.4th 68, 77 [applying *Teague* to decide whether *Crawford v. Washington* (2004) 541 U.S. 36 [124 S.Ct. 1354] (*Crawford*), which held testimonial hearsay was inadmissible in the absence of certain safeguards, is retroactive]; see also *In re Ruedas* (2018) 23 Cal.App.5th 777, 799 ["[a]lthough states are free to establish their own rules for determining the retroactivity of judicial opinions, California courts have generally hewed to the federal standard"].)

A few California courts have applied the California state law test for retroactivity stated in *In re Johnson* (1970) 3 Cal.3d 404 (*Johnson*), or have discussed both the federal and state tests, to decide whether a state law decision interpreting federal rights is retroactive.  (See, e.g., *In re Thomas* (2018) 30 Cal.App.5th 744, 760-761 ["the three-factor balancing test articulated in *Johnson* still governs whether we should apply [*People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*)] retroactively when a petitioner seeks state habeas corpus review"]; *In re Ruedas*, *supra*, 23 Cal.App.5th at pp. 793, 798 [using both the federal and state tests to decide whether *Sanchez* is retroactive]; see also *In re Gomez*, *supra*, 45 Cal.4th at p. 655, fn. 3 ["[o]f course, we are 'free to give greater retroactive impact to a decision than the federal courts choose to give'"].)  Because *Gallardo* is a state law decision interpreting federal constitutional rights, "out of an abundance of caution" (*In*

13

*re Ruedas*, at p. 799) we consider both the federal test under *Teague* and the state test under *Johnson*.

### 2. Gallardo *Is Not Retroactive Under* Teague

"Under *Teague*, as a general matter, 'new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced.' [Citation.] *Teague* and its progeny recognize two categories of decisions that fall outside this general bar on retroactivity for procedural rules. First, '[n]ew *substantive* rules generally apply retroactively.' [Citations.] Second, new '"watershed rules of criminal procedure,"' which are procedural rules 'implicating the fundamental fairness and accuracy of the criminal proceeding,' will also have retroactive effect." (*Welch v. United States* (2016) ___ U.S. ___, ___ [136 S.Ct. 1257, 1264] (*Welch*).) "The *Teague* framework creates a balance between, first, the need for finality in criminal cases, and second, the countervailing imperative to ensure that criminal punishment is imposed only when authorized by law. . . . If a new rule regulates only the procedures for determining culpability, the *Teague* balance generally tips in favor of finality. The chance of a more accurate outcome under the new procedure normally does not justify the cost of vacating a conviction whose only flaw is that its procedures 'conformed to then-existing constitutional standards.'" (*Id.* at p. ___ [136 S.Ct. at p. 1266].)

### a. Gallardo *Established a New Rule Under Federal Law*

"In general, . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the

14

Federal Government. . . . To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." (*Teague*, *supra*, 489 U.S at p. 301; see *Welch*, *supra*, 136 S.Ct. at p. 1264; *In re Gomez*, *supra*, 45 Cal.4th at p. 655.) "A case is not *dictated* by existing precedent if its outcome was 'susceptible to debate among reasonable minds.' [Citation.] Therefore, 'unless reasonable jurists hearing petitioner's claim at the time his conviction became final "would have felt *compelled* by existing precedent"' to apply the rule in question, the rule will be considered new and presumed not to apply on collateral review." (*In re Ruedas*, *supra*, 23 Cal.App.5th at p. 794.)

Milton argues *Gallardo* did not establish a new rule because, at the time his conviction became final in October 2000, the law—which Milton asserts included *Taylor v. United States* (1990) 495 U.S. 575 [110 S.Ct. 2143] (*Taylor*) and *Apprendi*— "dictated" the result in *Gallardo*. Neither case, however, had the far-reaching effects Milton argues it had.

*Taylor* interpreted a federal statute that provided for sentence enhancements if the defendant had three prior convictions for specified types of offenses, including burglary. (*Taylor*, *supra*, 495 U.S. at p. 578.) After examining the purpose and legislative history of the statute, the United States Supreme Court held the sentencing court could find the defendant received a prior conviction for a burglary within the meaning of the federal statute by looking "only to the fact of conviction and the statutory definition of the prior offense" or "the charging paper and jury instructions." (*Id.* at pp. 601-602.) *Taylor* involved statutory interpretation; it did not "dictate" the result in *Gallardo*, which is based on Sixth Amendment principles.

15

As stated, in *Apprendi* the United States Supreme Court held that all facts used to increase the defendant's punishment (other than the fact of a prior conviction) must be found by a jury. But the Supreme Court also recognized an exception to this general rule. (*Apprendi, supra*, 530 U.S. at pp. 488-490.) Two years before *Apprendi*, the United States Supreme Court decided in *Almendarez-Torres v. United States* (1998) 523 U.S. 224 (*Almendarez-Torres*) that, even though a jury did not make the finding the defendant had three prior convictions, the trial court could impose higher penalties without implicating the right to a jury trial because "recidivism 'does not relate to the commission of the offense, *but goes to the punishment only*, and therefore . . . may be subsequently decided.'" (*Almendarez-Torres*, at p. 244.) The United States Supreme Court in *Apprendi* declined to overrule *Almendarez-Torres* and instead distinguished it on "its unique facts": "[O]ur conclusion in *Almendarez-Torres* turned heavily upon the fact that the additional sentence to which the defendant was subject was 'the prior commission of a serious crime,'" a fact the defendant in that case did not contest. (*Apprendi*, at pp. 488-490.) The United States Supreme Court stated that recidivism was "'a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence.'" (*Id.* at p. 488.)

Thus, *Apprendi*, while providing the foundation for *Gallardo*, did not dictate the result in *Gallardo*, because *Gallardo* concerned the right to have a jury conduct factfinding under a sentencing statute aimed at recidivism. When the California Supreme Court considered a case involving a recidivist statute in *McGee*, it concluded the United States Supreme Court in *Apprendi* "left state courts free to undertake the analysis . . . *to*

*ascertain the facts underlying a prior conviction.*" (*McGee, supra*, 38 Cal.4th at p. 705.) The California Supreme Court in *Gallardo* acknowledged this area of the law was unsettled: "In the wake of *Apprendi*, questions arose about the scope of the so-called *Almendarez-Torres* exception to the general Sixth Amendment rule forbidding judicial factfinding in criminal cases." (*Gallardo, supra*, 4 Cal.5th at p. 128.)

*In re Gomez*, cited by Milton, does not suggest a different conclusion. In that case the California Supreme Court held *Cunningham, supra*, 549 U.S. 270 did not constitute a new rule for purposes of determining its retroactivity because its holding was "dictated by *Blakely* [*v. Washington* (2004) 542 U.S. 296 [124 S.Ct. 2531] (*Blakely*)]." (*In re Gomez, supra*, 45 Cal.4th at p. 660.) In *Blakely* the United States Supreme Court held a statutory scheme that permitted the sentencing court to impose additional penalties based solely on the court's finding the defendant committed a felony with "deliberate cruelty" violated the Sixth Amendment right to a jury trial. (*Blakely*, at pp. 298, 305.) In *Cunningham* the United States Supreme Court held a sentencing law that "assigns to the trial judge . . . authority to find the facts that expose a defendant to an elevated 'upper term' sentence" violated the Sixth Amendment right to a jury trial. (*Cunningham*, at p. 274.) The California Supreme Court in *In re Gomez* explained that the *Cunningham* decision "did not extend or modify the rule established in *Blakely*, but merely applied" the rule to the California sentencing scheme. (*In re Gomez*, at p. 658.)

In contrast, *Gallardo* did not merely apply the holding of *Apprendi* to the recidivist sentencing scheme in California. To be sure, the opinion in *Gallardo* discussed the *Apprendi* decision.

17

(See *Gallardo, supra*, 4 Cal.5th at p. 128.) But, as discussed, the California Supreme Court drew heavily on *Descamps* and *Mathis* in holding a jury must find the facts that support increased punishment based on recidivism. (*Id.* at p. 134.) Indeed, the California Supreme Court in *Gallardo* emphasized that it benefited from "further explication by the high court" and that the holding in *Gallardo* was "consistent with [the] principle" of *Descamps* that judicial factfinding "does not extend 'beyond the recognition of a prior conviction.'" (*Id.* at p. 136.) *Apprendi*, decided 13 years before the United States Supreme Court decided *Descamps* and *Mathis*, did not "dictate" the holding in *Gallardo*. *Gallardo* announced a "new rule" under *Teague*.

### b. Gallardo *Is a Procedural Rule*

"'A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.' [Citation.] . . . Procedural rules, by contrast, 'regulate only the *manner of determining* the defendant's culpability.' [Citation.] Such rules alter 'the range of permissible methods for determining whether a defendant's conduct is punishable.' [Citation.] 'They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.'" (*Welch, supra*, 136 S.Ct. at pp. 1264-1265; see *Schriro v. Summerlin* (2004) 542 U.S. 348, 353 [124 S.Ct. 2519] (*Schriro*); *In re Lopez* (2016) 246 Cal.App.4th 350, 357.) "Because of this more speculative connection to innocence, we give retroactive effect to only a small set of "'watershed rules of criminal procedure" implicating the

18

fundamental fairness and accuracy of the criminal proceeding.'" (*Schriro*, at p. 352.)

The holding of *Gallardo*, that the trial court's role in considering whether to impose an increased sentence is limited to identifying facts established by the conviction (*Gallardo*, *supra*, 4 Cal.5th at p. 136), is a procedural rule because it prescribes the manner of finding facts to increase the defendant's sentence. Before *Gallardo*, the trial court, as authorized by *McGee*, could examine the entire record of conviction to determine the "nature or basis" of the prior conviction based on its independent conclusion. (*McGee, supra*, 38 Cal.4th at p. 706.) After *Gallardo*, the trial court can only look at a subset of this record, namely, facts that "the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea." (*Gallardo*, at p. 136.) The Supreme Court in *Gallardo* described the trial court's error as one concerning the "form" of judicial factfinding. (See *ibid.* ["the trial court engaged in a form of factfinding that strayed beyond the bounds of the Sixth Amendment"].) As discussed, a new rule that changes the form or procedure of factfinding is procedural. (See *Welch, supra*, 136 S.Ct. at p. 1266 [a new rule "has a procedural function" where "it alters only the procedures used to obtain the conviction"]; see also *In re Moore, supra*, 133 Cal.App.4th at p. 75 [*Crawford* "announced a new rule of procedural constitutional law" because before *Crawford, Ohio v. Roberts* (1980) 448 U.S. 56 [100 S.Ct. 2531] (*Roberts*) "provided the procedure for determining whether the admission of hearsay statements violated the confrontation clause"].)

19

Cases holding *Apprendi* and *Blakely* announced procedural rules and do not have retroactive application are instructive.[9] (See *People v. Anderson* (2009) 47 Cal.4th 92, 118 ["the United States Supreme Court has made it clear that *Apprendi*, and cases following it, did not alter state substantive law"]; *People v. Amons* (2005) 125 Cal.App.4th 855, 865 (*Amons*) [*Blakely* "is a procedural rule that affects only the manner of determining the defendant's punishment"]; *United States v. Sanchez-Cervantes* (9th Cir. 2002) 282 F.3d 664, 668 ["*Apprendi* was a new rule of criminal procedure"]; cf. *Welch, supra,* 136 S.Ct. at p. 1265 [*Johnson v. United States* (2015) ___ U.S. ___ [135 S.Ct. 2551], which held a federal statutory sentence enhancement was unconstitutionally vague, "changed the substantive reach" of a sentencing statute, "had nothing to do with the range of permissible methods a court might use to determine whether a defendant should be sentenced," and "did not, for example, 'allocate decisionmaking authority' between judge and jury"].) The rules announced in *Apprendi* and *Blakely* protect the defendant's right to have a jury determine the facts to support an increased sentence by changing the factfinder from judge to jury. (See *Apprendi, supra,* 530 U.S. at p. 466; *Blakely, supra,* 542 U.S. at p. 296.) *Gallardo* protects the same right in the context of a recidivist statute by a slightly different method, limiting the role of the sentencing court and the kind of materials the court can consider. (See *Gallardo, supra,* 4 Cal.5th at p. 136.) Because

---

[9]     The *Apprendi* opinion described the issue before the United States Supreme Court as procedural: "The substantive basis for New Jersey's enhancement is . . . not at issue; the adequacy of New Jersey's procedure is." (*Apprendi, supra,* 530 U.S. at p. 475.)

*Gallardo* altered "'the range of permissible methods for determining whether a defendant's conduct is punishable'" (*Welch*, *supra*, 136 S.Ct. at p. 1265), it is procedural.

The cases Milton cites to support his argument *Gallardo* announced a substantive rule rather than a procedural rule are distinguishable. In *Montgomery v. Louisiana* (2016) ___ U.S. ___ [136 S.Ct. 718] the United States Supreme Court decided that *Miller v. Alabama* (2012) 567 U.S. 460 [132 S.Ct. 2455] (*Miller*), which held a sentencing scheme mandating a sentence of life without the possibility of parole for juveniles convicted of murder violated the Eighth Amendment, applied retroactively. The United States Supreme Court in *Montgomery* explained that *Miller* changed a substantive rule of criminal law because, "[b]efore *Miller*, every juvenile convicted of a homicide offense could be sentenced to life without parole. After *Miller*, it will be the rare juvenile offender who can receive that same sentence." (*Montgomery*, at p. 734.) *Gallardo* did not alter the substantive reach of the California sentencing laws.

In *People v. Trujeque* (2015) 61 Cal.4th 227 the California Supreme Court decided that *Breed v. Jones* (1975) 421 U.S. 519 (*Breed*), which held a state may not prosecute a juvenile for an offense as an adult after the juvenile court has commenced adjudicatory proceedings, applied retroactively. (*Trujeque*, at p. 249.) The California Supreme Court in *Trujeque* explained the rule in *Breed* was substantive because, "without the rule's retroactive application, a defendant would otherwise 'face[ ] a punishment that the law cannot impose upon him.'" (*Trujeque*, at p. 251.) In contrast, *Gallardo* did not alter the scope or applicability of section 1192.7, subdivision (c)(8), or the three strikes law; it only limited the role of the trial court and the kind

21

of evidence the court can consider to determine if a defendant's prior felony conviction is a serious or violent felony conviction. (See *Gallardo*, *supra*, 4 Cal.5th at p. 136.) Thus, if the sentencing court, after examining the facts the Illinois jury necessarily found in convicting Milton of armed robbery and any admissions Milton made in pleading guilty to simple robbery, determined Milton used a gun, the sentencing court could still apply section 1192.7, subdivision (c)(8), to increase his sentence. Unlike *Trujeque*, *Gallardo* did not remove Milton from the reach of the applicable sentencing laws. *Gallardo* only changed the manner in which the court could determine whether the prior convictions subjected Milton to increased punishment.

> c.     Gallardo *Is Not a Watershed Rule of Criminal Procedure*

"In order to qualify as watershed, a new rule must meet two requirements. First, the rule must be necessary to prevent 'an "'impermissibly large risk'"' of an inaccurate conviction. [Citations.] Second, the rule must 'alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" (*Whorton v. Bockting* (2007) 549 U.S. 406, 418 [127 S.Ct. 1173]; see *ibid*. ["'[i]t is . . . not enough . . . to say that [the] rule' . . . 'is directed toward the enhancement of reliability and accuracy in some sense'"]; *Schriro*, *supra*, 542 U.S. at p. 352 ["[t]hat a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is *seriously* diminished'"].)

*Gallardo*, though significant, was not a watershed rule of criminal procedure because limiting the role of the trial court and the scope of what the court may review and consider to impose an

22

increased sentence is not a rule "'without which the likelihood of an accurate conviction is *seriously* diminished.'" (*Schriro*, *supra*, 542 U.S. at p. 352.) The California Supreme Court in *Gallardo* prohibited sentencing courts from making "independent conclusions" about a prior conviction and excluded some of the evidence sentencing courts used to consider in deciding whether to increase the defendant's punishment. (See *Gallardo*, *supra*, 4 Cal.5th at p. 136.) But the California Supreme Court did not reach this conclusion because a sentencing court's factfinding, or the kind of evidence sentencing courts used to consider in connection with that factfinding, was somehow inaccurate or unreliable. Rather, the California Supreme Court in *Gallardo* limited the role of the sentencing court in imposing increased sentences and the materials the sentencing court can consider to protect the defendant's Sixth Amendment jury trial right. (See *id.* at p. 135 ["when the sentencing court must rely on a finding regarding the defendant's conduct, but the jury did not necessarily make that finding (or the defendant did not admit to that fact), the defendant's Sixth Amendment rights are violated"]; cf. *Whorton v. Bockting*, *supra*, 549 U.S. at p. 419 ["*Crawford* overruled *Roberts* because *Roberts* was inconsistent with the original understanding of the meaning of the Confrontation Clause, not because the Court reached the conclusion that the overall effect of the *Crawford* rule would be to improve the accuracy of factfinding in criminal trials"].)

Changing how and to what extent sentencing courts may make factual findings does not necessarily mean those factual findings are more or less accurate than factual findings by a jury. (See *Schriro*, *supra*, 542 U.S. at p. 356 ["[w]hen so many presumably reasonable minds continue to disagree over whether

23

juries are better factfinders *at all*, we cannot confidently say that judicial factfinding *seriously* diminishes accuracy"]; *Amons*, *supra*, 125 Cal.App.4th at p. 866 ["[l]ike *Apprendi* and *Ring* [*v. Arizona* (2002) 536 U.S. 584 [122 S.Ct. 2428]] before it, nothing in the *Blakely* opinion corrected a procedure that acutely diminished the accuracy of previously rendered convictions or sentences"].) The United States Supreme Court in *Apprendi* observed the jury trial right has evolved to "'guard against a spirit of oppression and tyranny on the part of rulers'" and to stand "'as the great bulwark of [our] civil and political liberties.'" (*Apprendi*, *supra*, 530 U.S. at p. 477; see *Blakely*, *supra*, 542 U.S. at p. 306 ["[j]ust as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary"].)  The California Supreme Court in *Gallardo* did not cite the need to correct or compensate for inaccuracy in judicial factfinding.

The record of conviction a trial court could consider before *Gallardo* may have included material with questionable reliability (such as the Illinois judge's handwritten notes in Milton's case), but the sentencing court in California still had to apply the beyond-a-reasonable-doubt standard of proof.  "[T]he Three Strikes law has always required that a qualifying prior conviction be 'pled and proved,'" and "courts have held or acknowledged that the prosecution bears the burden of proving beyond a reasonable doubt that a prior conviction is a serious or violent felony." (*People v. Frierson* (2017) 4 Cal.5th 225, 233; see *People v. Miles* (2008) 43 Cal.4th 1074, 1082, 1094 ["[t]he People must prove all elements of an alleged sentence enhancement beyond a reasonable doubt"]; *People v. Hudson* (2018) 28 Cal.App.5th 196, 203 [the prosecution must prove beyond a

24

reasonable doubt that the defendant's prior conviction was a serious or violent felony].)  Because *Gallardo* did not change the prosecution's burden to prove the truth of allegations supporting an increased sentence, the rule announced in *Gallardo* did not result in a significant increase in accuracy.  *Gallardo* is not necessary to prevent an """"impermissibly large risk"""" (*Whorton v. Bockting*, *supra*, 549 U.S. at p. 418) of an inaccurate conviction. (See *id*. at at p. 420 ["the question here is not whether *Crawford* resulted in some net improvement in the accuracy of fact finding in criminal cases," but "'whether testimony admissible under *Roberts* is so much more unreliable . . . that the *Crawford* rule is "one without which the likelihood of an accurate conviction is *seriously* diminished"""].)

Nor does the rule in *Gallardo* "'alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" (*Whorton v. Bockting*, *supra*, 549 U.S. at p. 418.)  In order to qualify as a bedrock procedural rule, "a new rule must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding.  In applying this requirement, we . . . have looked to the example of *Gideon* [*v. Wainwright* (1963) 372 U.S. 335 [83 S.Ct. 792]] and 'we have not hesitated to hold that less sweeping and fundamental rules' do not qualify." (*Whorton*, at p. 421; see *id*. at p. 420 ["[t]he *Crawford* rule also did not 'alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding'"].)  Indeed, *Apprendi* and *Blakely* (an extension of *Apprendi*) did not announce "bedrock" rules.  (See *Amons*, *supra*, 125 Cal.App.4th at p. 867 ["*Blakely* did not proclaim . . . a 'bedrock principle'"]; *United States v. Sanchez-Cervantes*, *supra*, 282 F.3d at p. 669 [rule established in *Apprendi* is not "a bedrock

25

procedural element"].)  If *Apprendi*, *Blakely*, and *Crawford* did not alter "bedrock procedural rules" fundamental to a fair proceeding, *Gallardo* didn't either.

>3.      Gallardo *Is Not Retroactive Under* Johnson

Under *Johnson, supra,* 3 Cal.3d 404 "[t]he retrospective effect of a law-making opinion is to be determined by "'(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.'" [Citations.]  It is also clear that the factors of reliance and burden on the administration of justice are of significant relevance only when the question of retroactivity is a close one after the purpose of the new rule is considered." (*Id.* at p. 410; see *In re Thomas*, *supra*, 30 Cal.App.5th at p. 763 ["we weigh the new rule's importance and impact against the disruption that would be caused by applying the new rule to final cases where law enforcement, including prosecutors, relied on the old rule in investigating and prosecuting those cases originally"].)

"Fully retroactive decisions are seen as vindicating a right which is essential to a reliable determination of whether an accused should suffer a penal sanction. . . .  [¶]  On the other hand, decisions which have been denied retroactive effect are seen as vindicating interests which are collateral to or relatively far removed from the reliability of the fact-finding process at trial." (*Johnson, supra*, 3 Cal.3d at pp. 410-412.)  "If the new rule aims . . . to define procedural rights merely incidental to a fair determination of guilt or innocence, it will generally not be given retroactive effect.  [Citations.]  On the other hand, if a decision

26

goes to the integrity of the factfinding process [citation] or 'implicates questions of guilt and innocence' [citation], retroactivity is the norm." (*In re Thomas*, *supra*, 30 Cal.App.5th at p. 763; see *People v. Guerra* (1984) 37 Cal.3d 385, 402 ["'[w]here the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect'"].)

a. Gallardo *Established a New Rule Under State Law*

"Decisions establish 'new rules' when they depart from clear contrary rules established in prior judicial decisions. In practice, that means decisions establish new rules when they (1) explicitly overrule a precedent of the California Supreme Court, or (2) disapprove a practice implicitly sanctioned by prior decisions of the Supreme Court, or (3) disapprove a long-standing and widespread practice expressly approved by a near-unanimous body of lower court authorities." (*In re Thomas*, *supra*, 30 Cal.App.5th at p. 761; see *People v. Guerra, supra*, 37 Cal.3d at p. 401.) *Gallardo* established a new rule under state law because it "disapproved" *McGee* and the practice of judicial factfinding to support an increased penalty. (*Gallardo*, *supra*, 4 Cal.5th at p. 125; see *People v. Saez* (2015) 237 Cal.App.4th 1177, 1199 ["[w]e recognize that for years trial courts in California have been allowed to determine whether a prior conviction qualifies as a strike by looking to the 'entire record of conviction'"].)

27

b. Gallardo *Did Not Vindicate a Right Essential to the Reliability of the Factfinding Process*

As stated in connection with the federal retroactivity test, by limiting the sentencing court's role and limiting the evidence the court can consider in determining whether to increase the defendant's punishment, the California Supreme Court in *Gallardo* did not impugn the accuracy of factfinding by trial courts. The Supreme Court in *Gallardo* held that independent inquiry and factfinding by sentencing courts were problematic because such actions "invaded[d] the jury's province." (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) As discussed, however, judicial factfinding is not inherently unreliable or less reliable than jury factfinding. (See *Schriro*, *supra*, 542 U.S. at p. 356; *In re Consiglio* (2005) 128 Cal.App.4th 511, 515; see also *Johnson*, *supra*, 3 Cal.3d at p. 412 ["although . . . cases recognized that juries may serve to prevent arbitrariness and repression, they did not rest on any assumption that nonjury trials are more likely than jury trials to be unfair or unreliable"].)[10]

---

[10] Also as discussed in connection with the federal test for retroactivity, *Gallardo* did not raise the standard of proof for proving the truth of prior conviction allegations to support an increased sentence. Given that before *Gallardo* the prosecution had to prove beyond a reasonable doubt a prior conviction qualified as a serious or violent felony, we cannot say the "'major purpose'" of *Gallardo* was to "'overcome an aspect of the criminal trial that substantially impair[ed] . . . truth-finding function and so raise[d] serious questions about the accuracy of guilty verdicts in past trials.'" (*People v. Guerra, supra*, 37 Cal.3d at p. 402.)

Recent cases holding *Sanchez* is not retroactive support the conclusion that *Gallardo* is not retroactive. In *In re Thomas*, *supra*, 30 Cal.App.5th 744 the court explained that hearsay evidence of a defendant's gang membership, previously admissible as the basis for a gang expert's opinion, did not "raise[ ] doubts about the fundamental fairness of past trials" or "threaten[ ] to lead to the introduction of corrupt evidence supporting conviction." (*Id.* at p. 765.) The court in *Thomas* stated that after *Sanchez*—because the expert could simply present his or her opinion without stating its hearsay basis, or the prosecution could call another witness "to provide the foundation for the expert's opinion"— the connection of the *Sanchez* rule to "the factuality of convictions is attenuated and does not raise serious questions about the accuracy of guilty verdicts in past trials." (*In re Thomas*, at pp. 765-766; see *In re Ruedas*, *supra*, 23 Cal.App.5th at p. 800 [after *Sanchez*, the prosecutor can call the hearsay declarant as a witness or ask the expert to describe the hearsay information that formed the basis of his or her opinion in general terms].)

Similarly, as the Supreme Court in *Gallardo* recognized, a prosecutor can "demonstrate to the trial court, based on the record of the prior plea proceedings, that defendant's guilty plea encompassed a relevant admission about the nature of her crime." (*Gallardo*, *supra*, 4 Cal.5th at p. 139.) Thus, if *Gallardo* applied retroactively to Milton, the prosecutor on remand could review the Illinois record for findings the Illinois jury necessarily made in convicting him of armed robbery, as well as factual admissions Milton made (such as the "stipulated facts" to which the Illinois sentencing court referred) in pleading guilty to simple robbery, to prove Milton used a gun in committing either or both

29

crimes. Although under *Gallardo* the People could not use the Illinois judge's handwritten notes or statements to prove Milton used a gun, the People could prove Milton used a gun by other means.[11]

> ### c. *Applying* Gallardo *Retroactively Would Be Disruptive*

Even if the question of retroactivity were "a close one" (*In re Johnson, supra,* 3 Cal.3d at p. 410), the final factor of the state test for retroactivity weighs against retroactive application. As discussed, at and after the time of Milton's sentencing California courts affirmed sentence enhancements based on factual findings by sentencing courts. (See *Gallardo, supra,* 4 Cal.5th at p. 125 ["For some time, California cases have held that . . . determinations [of whether a prior conviction qualified as a

---

[11] The cases Milton cites are distinguishable because they involved substantive changes to the law that implicated the defendant's guilt and innocence. (See *Johnson, supra,* 3 Cal.3d at p. 416 [*Leary v. United States* (1969) 395 U.S. 6 [89 S.Ct. 1532], which held a defendant's assertion of the Fifth Amendment privilege against self-incrimination is a complete defense to a prosecution under a federal criminal statute, was retroactive because "*Leary* . . . involves the question of guilt and innocence as well as Fifth Amendment values which are collateral to guilt"]; *In re Lucero* (2011) 200 Cal.App.4th 38, 41, 46 [*People v. Chun* (2009) 45 Cal.4th 1172, which held "the crime of shooting at an occupied vehicle . . . can no longer provide a predicate for application of the felony-murder rule," was retroactive because the defendant "might have been acquitted of murder *but for* application of the felony-murder rule"].)

30

serious felony] are to be made by the court, rather than the jury, based on a review of the record of the prior criminal proceeding."].)  Applying *Gallardo* retroactively would cause significant disruption by requiring courts to reopen countless cases, conduct new sentencing hearings, and locate records of proceedings conducted long ago to ascertain "what facts were necessarily found or admitted in the prior proceeding." (*Gallardo*, at p. 138; cf. *In re Thomas*, *supra*, 30 Cal.App.5th at p. 766 ["applying *Sanchez* retroactively to final cases would result in reopening thousands of cases in which the prosecution used a shortcut even though it could have obtained a conviction using other evidence," which "would be too disruptive and costly"]; *In re Ruedas*, *supra*, 23 Cal.App.5th at p. 801 ["It cannot be gainsaid that it would be exceedingly disruptive and costly to retry the many thousands of cases that were adjudicated under the old [pre-*Sanchez*] framework."].)

## DISPOSITION

The petition is denied.

SEGAL, J.

We concur:

PERLUSS, P. J.            ZELON, J.

31